# Exhibit A

**Form of Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Entelos, Inc.,**[1] | ) | **Case No.: 11-12329 (PJW)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | **Re: Docket No. __** |
| | ) | |
| | ) | |

## ORDER (A) APPROVING BIDDING PROCEDURES; AND
## (B) APPROVING THE FORM AND MANNER OF NOTICES THEREOF

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for the entry of an order (the "Order") (a) approving the bidding procedures substantially in the form attached as **Exhibit 1** (the "Bidding Procedures") and (b) approving the form and manner of notices thereof; it appearing that the relief requested is in the best interests of the Debtor's estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

---

[1] The last four digits of the debtor's federal tax identification number are 5818.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, the Stalking Horse Agreement or the Bidding Procedures, as applicable.

**THE COURT HEREBY FINDS THAT:**[3]

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory bases for the relief requested in the Motion are (a) sections 105 and 363 of the Bankruptcy Code and (b) Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

C.     Notice of the Motion has been provided to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Imperium; (c) the creditors listed on the Debtor's list of 20 largest unsecured creditors, as filed with the Debtor's chapter 11 petitions; (d) counsel to the Purchaser; (e) all parties asserting a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (f) the Debtor's landlords and each of the notice parties identified in the real property leases to the extent possible; (g) various federal, state, county and city tax and regulatory authorities; (h) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets or that has been indentified by the Debtor as a potential purchaser of the Acquired Assets; and (i) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). *See* Affidavits of Service [Docket Nos. __ and __].

D.     The Debtor have articulated good and sufficient reasons for this Court to (i) approve the Bidding Procedures; (ii) set the hearing (the "Sale Hearing") to approve the Sale and approve the manner of notice of the Motion and the Sale Hearing; and (iii) establish procedures for noticing and determining cure amounts for executory contracts ("Executory

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Contracts") and unexpired leases ("Unexpired Leases") that may be assumed and assigned in connection with the Sale (the "Cure Procedures").

     E.    The Debtor and the Purchaser have executed and filed with the Court the Bill of Sale dated [_____], 2011 (the "Stalking Horse Agreement"), a copy of which is attached as **Exhibit B** to the Motion.

     F.    The Debtor represents that the Stalking Horse Agreement was negotiated by the parties at arms'-length and in good faith after months of discussions and negotiations with all relevant parties.

     G.    The Bidding Procedures and the Cure Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor's estate through the Sale and the transfer of the Acquired Assets to the Successful Bidder free and clear of all Liens, Claims and Interests pursuant to section 363(f) of the Bankruptcy Code.

     **IT IS HERBY ORDERED THAT:**

     1.    The Motion is granted as provided herein.

     2.    The Bidding Procedures and Cure Procedures are hereby approved, are incorporated herein by reference, and shall govern all bids and proceedings related to the Sale and the assumption and assignment of the Executory Contracts and Unexpired Leases. The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures and the Cure Procedures.

     3.    All objections to the Bidding Procedures and Cure Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

     4.    Within five (5) days after the entry of this Order (the "Mailing Date") or as soon thereafter as practicable, the Debtor (or its agent) shall serve the Sale Notice, substantially in the

form attached as **Exhibit 2**, and a copy of this Order by first-class mail, postage prepaid, upon the Notice Parties; the Debtor (or its agent) shall also serve the Sale Notice on all parties to executory contracts or unexpired leases that were previously notified pursuant to the Cure Notice (as defined below) that their contract or lease may be assumed and assigned by the Debtor.

5.     The form of the Sale Notice and the manner of such notice are good and sufficient for all purposes and no other or further notice shall be required upon the Debtor.

6.     As set forth in the Bidding Procedures, to the extent that at least one Qualified Bid (other than from the Purchaser) is timely received, the Debtor shall conduct the Auction at 10:00 a.m. (Eastern) on September 2, 2011, at the offices of Reed Smith LLP (1201 N. Market Street; Suite 1500; Wilmington, DE 19801) or such later time on such day or other place as the Debtor shall notify the following parties  (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Imperium, (c) any other Qualified Bidder who has submitted a Qualified Bid, (d) counsel to the Official Committee of Unsecured Creditors, if any, and (d) any creditor that has indicated to counsel to the Debtor that it wishes to attend the Auction.

7.     The Stalking Horse Agreement constitutes a Qualified Bid and the Purchaser is a Qualified Bidder, for all purposes and requirements under the Bidding Procedures.  Unless otherwise ordered by the Court, Purchaser shall be entitled to credit bid post-petition and pre-petition secured claims of Imperium and its collateral agent arising under the DIP Facility and the Existing Financing Agreements, respectively, up to the amount equal to the sum of (a) the obligations then outstanding under the DIP Facility, _plus_ (b) the outstanding amount of prepetition obligations owing under the Existing Financing Agreements.

8.    If no Qualified Bid other than the Stalking Horse Agreement is timely received, the Debtor shall not conduct an Auction and shall designate the Purchaser as the Successful Bidder.

9.    All Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of the Court with respect to all matters related to the Auction and the terms and conditions of the sale of the Acquired Assets.

10.    In accordance with the Assumption and Cure Procedures:

a.    Within seven (7) business days of the filing of the Motion, the Debtor shall file a notice identifying certain Executory Contracts and Unexpired Leases that the Debtor may seek to assume and assign to the Purchaser, their designee(s) or such other Successful Bidder in connection with the Sale (the "Assumption and Cure Notice"), a copy of which is attached as **Exhibit 3**, and serve the Assumption and Cure Notice on all non-debtor counterparties to Executory Contracts and Unexpired Leases (each, a "Contract Counterparty") identified therein; *provided, however,* that the presence of an Executory Contract or Unexpired Lease on **Exhibit 3** does not constitute an admission that such Executory Contract or Unexpired Lease is an executory contract or unexpired lease. The Debtor reserves all of their rights, claims and causes of action with respect to the Executory Contracts and Unexpired Leases referenced on **Exhibit 3**.

b.    The Assumption and Cure Notice shall state the Cure Amounts that the Debtor believes are necessary to assume the Executory Contracts and Unexpired Leases (collectively, the "Contracts") pursuant to section 365 of the Bankruptcy Code and notify all Contract Counterparties that such party's Contract may be assumed and assigned to the Purchaser, its designee(s) or such other Successful Bidder to be identified at the

conclusion of the Auction. Service of the Assumption and Cure Notice and the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, upon the Contract Counterparties constitutes sufficient notice of the Motion and the relief requested therein with respect to the Contracts, including, <u>inter alia</u>, the Cure Procedures and the proposed assumption, assignment, and sale of certain Executory Contracts and Unexpired Leases in connection with the Sale of the Acquired Assets, and no other or further notice shall be required upon the Contract Counterparties except as contemplated in the Motion or herein.

11.     All objections by Contract Counterparties to the proposed assumption and assignment of the applicable Executory Contracts or Unexpired Leases and the Cure Amounts listed in the Assumption and Cure Notice must be filed within **fourteen (14) days after service of the Assumption and Cure Notice** (the "<u>Cure Objection Deadline</u>") and served on (i) the Debtor's counsel, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (attn: Kurt F. Gwynne, Esq.), (ii) the Debtor (Entelos, Inc.; 110 Marsh Drive Foster City, California 94404) (attn:  Shawn O'Connor, CEO); (iii) counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.); and (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (attn:  David Klauder, Esq.) (the "<u>Cure Objection Notice Parties</u>").  All objections to any proposed assumption and assignment or Cure Amount must set forth (i) the basis for the objection, (ii) the exact amount the Contract Counterparty asserts as the Cure Amount, if applicable, and (iii) sufficient documentation to support the Cure Amount alleged, if applicable.  Failure of a party to object to

the proposed assumption and assignment of any Customer Agreement to the Purchaser or its designee(s) shall be deemed by the Debtor to be consent to such assumption and assignment.

12.    The Debtor may amend the Assumption and Cure Notice with respect to any Cure Amount or to identify any additional Contracts or Customer Agreements that were omitted from the Assumption and Cure Notices.  If the Debtor amends the Assumption and Cure Notice, any Contract Counterparties affected by the amendment must file any objection to the amended Assumption and Cure Amount within fourteen (14) days after service of the amended Assumption and Cure Notice and serve such objection on the Cure Objection Notice Parties.

13.    Objections to any assumption and assignment or Cure Amount will be heard at the Sale Hearing or at a later hearing, as determined by the Debtor with the prior consent of the Purchaser or such other party as is determined to be the Successful Bidder.

14.    Unless a Contract Counterparty files an objection to the assignment and assumption or the Cure Amount by the Cure Objection Deadline, then such Contract Counterparty shall be (i) forever barred from objecting to the assignment and assumption and the Cure Amount in connection with the Sale; and (ii) forever barred and estopped from asserting or claiming any Cure Amount against the Debtor, the Successful Bidder or any other assignee of the relevant Contract or Customer Agreement, in connection  with the Sale.

15.    The Assumption and Cure Notice also shall contain the Stalking Horse Adequate Assurance Information and provide contact information should a Contract Counterparty deem it necessary to request additional adequate assurance information from the Purchaser.  The Debtor will endeavor to file with the Bankruptcy Court any non-confidential adequate assurance information received from other Bidders within twenty four (24) hours of receipt of such adequate assurance information.  In the event that the Successful Bidder is not the Purchaser,

objections regarding adequate assurance of future performance may be raised at the Sale Hearing.

16.     The Sale Hearing will be conducted at _____:_____ ___.m. on September 8, 2011, in the courtroom of the Honorable [_____], United States Bankruptcy Judge for the District of Delaware, _____ Floor, Court room No. _____, 824 Market Street; Wilmington, DE 19801.  The Debtor will seek entry of an order at the Sale Hearing approving and authorizing the sale of the Acquired Assets to the Successful Bidder.  The Sale Hearing may be continued from time to time with the consent of the Purchaser or such other party as is determined to be the Successful Bidder without further notice other than such announcement made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

17.     Objections, if any, to the relief requested in the Motion as it relates to the relief to be considered at the Sale Hearing, the assumption and assignment of a party's executory contract and/or unexpired lease, or the Stalking Horse Adequate Assurance Information, must (a) be in writing and filed with the Court **no later than 4:00 p.m. (Eastern) on [insert same date as the Cure Objection Deadline]** (the "Sale Objection Deadline") and served on the following parties **so that it actually received by the Sale Objection Deadline** (a) the Debtor's counsel, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (attn: Kurt F. Gwynne, Esq.); (b) the Debtor (Entelos, Inc.; 110 Marsh Drive Foster City, California 94404) (attn:  Shawn O'Connor, CEO); (c) counsel for the Official Committee of Unsecured Creditors, if any; (d) counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.); and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35,

Wilmington, Delaware 19801 (attn: David Klauder, Esq.) (Facsimile: 302-573-6497). Notwithstanding the foregoing, in the event that the Successful Bidder is not the Purchaser, objections regarding adequate assurance of future performance may be raised orally at the Sale Hearing.

18. The Purchaser has standing and is deemed to be a party in interest with standing to be heard on any motion, hearing or other matter related to the Stalking Horse Agreement, the Bidding Procedures, the Auction or the Sale Hearing.

19. To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control.

20. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21. Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

22. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

23. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Date: [_____ __], 2011
      Wilmington, Delaware

[_____]
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## (Form of Bidding Procedures)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:               ) | Chapter 11 |
|                  ) | |
| Entelos, Inc.,[1]      ) | Case No.: 11-_____ (____) |
|                  ) | |
|          Debtor.    ) | |
|                  ) | |
|                  ) | |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by the above-captioned Debtor and Debtor in possession (the "Debtor") with respect to the sale (the "Sale") of all of the Debtor's right, title and interest of every kind and nature (including indirect and other forms of beneficial ownership) in and to all of the properties, assets and rights (contractual or otherwise) of the Debtor as of the Closing Date, whether tangible or intangible, real or personal and wherever located and by whomever possessed, certain enumerated properties, rights, and assets, but excluding the Excluded Assets (collectively, the "Acquired Assets").[2] The Sale will be implemented through the bill of sale attached hereto as **Exhibit A** (the "Stalking Horse Agreement") with Imperium Master Fund, Ltd. or its assignee or designee (the "Purchaser"), subject to the receipt of higher and better bids in accordance with these Bidding Procedures.

### Approval of Bidding Procedures and the Expense Reimbursement

On [_____], 2011, the Bankruptcy Court entered an order (the "Bid Procedures Order") approving, among other things, the Bidding Procedures. Should the Debtor fail, in any material respect, to meet any of the dates in the Bidding Procedures Order or outlined herein, the Purchaser may unilaterally and in its sole discretion decide to terminate the Stalking Horse Agreement to the extent permitted under the terms of the Stalking Horse Agreement.

### Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtor to satisfy each of the following requirements:

        (i)        Minimum Bid Amount. Any Qualifying Bid (other than the Stalking Horse Agreement) at the Auction must be higher and better than the offer of the Purchaser under the Stalking Horse

---

[1] The last four digits of the debtor's federal tax identification number are 5818.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Motion"), the Bid Procedures Order or the Stalking Horse Agreement, as applicable.

Agreement and that is not less than the sum of (A) the Credit Bid Amount and the Cure Amounts in cash; and (B) $50,000 in cash (the "Minimum Bid Amount").

(ii) <u>Acquired Assets</u>. Any Qualifying Bid must seek to acquire substantially all of the Acquired Assets;

(iii) <u>Same or Better Terms</u>. The Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the Stalking Horse Agreement. A Bid must include executed transaction documents (the "Competing Transaction Documents") pursuant to which the Bidder proposes to effectuate a competing transaction (a "Competing Transaction"). A Bid shall include a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to the Purchase Price);

(iv) <u>Identity</u>. All Bids must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation;

(v) <u>Contingencies</u>. A Bid may not be conditioned on (i) obtaining financing or any internal approval or (ii) on the outcome or review of due diligence;

(vi) <u>Proof of Financial Ability to Perform</u>. A Bid (other than the Stalking Horse Agreement) must provide written evidence that the Debtor reasonably concludes demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under the Acquired Contracts to be assumed and assigned in the Competing Transaction. Such information should include, among other things, the following:

    (a) contact names and telephone numbers for verification of financing sources;

    (b) evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

    (c) the Bidder's current financial statements (audited if they exist and, if unaudited, most recent audited financial statements); and

    (d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably

acceptable to the Debtor demonstrating that such Bidder has the ability to close the Competing Transaction;

(vii) <u>Irrevocable</u>. A Bid made by any Bidder other than the Purchaser must be irrevocable through the Auction; <u>provided</u> that if such Bid is accepted as the Highest or Best Bid or the Backup Bid (as defined in the Bidding Procedures), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures;

(viii) <u>Identification of Executory Contracts and Unexpired Real Property Leases</u>. The Bid shall identify with particularity the Debtor's executory contracts and unexpired leases with respect to which the Bidder seeks to receive an assignment and any designation rights;

(ix) <u>Corporate Authority</u>. Written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; <u>provided</u> that if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor and the Purchaser of the approval of the Competing Transaction by the equity holder(s) of such Bidder; and

(x) <u>Adequate Assurance Information</u>. The Bid shall include sufficient financial or other information (the "<u>Adequate Assurance Information</u>") to establish adequate assurance of future performance with respect to any lease or contract to be assumed and assigned to the Bidder in connection with the proposed transaction and Bidder's agreement that such Adequate Assurance Information can be faxed or emailed to any counterparties to such contracts or leases (or their counsel) within 24 hours of submission of the Bid; provided, however, that the counterparties to such contracts and leases must keep any information marked in the Adequate Information as confidential (the "<u>Confidential Information</u>") provided that the Confidential Information may be referred to and quoted in any hearing before the Bankruptcy Court held to consider the assumption and assignment of such contract or lease and further provided, however, that to the extent that any party desires to introduce the Confidential Information as an exhibit at any hearing, such party shall request that the Bankruptcy Court treat the Confidential Information as confidential, unless the Debtor and the applicable Bidder have agreed that such confidential treatment by the Bankruptcy Court is not necessary. The Bid shall also identify a contact person (with relevant contact information) that counterparties to any lease or

contract can contact to obtain additional Adequate Assurance Information.

(xi) <u>Bid Deadline</u>: Any Bid must be transmitted via email (in .pdf or similar format) to (i) the Debtor (Entelos, Inc.; 110 Marsh Drive Foster City, California 94404) (attn: Shawn O'Connor, CEO); (ii) counsel to the Debtor, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (attn: Kurt F. Gwynne, Esq.); (iii) counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.) (provided, however, that confidential information with respect to financing sources need not be provided to the Purchaser); and (v) counsel to the Official Committee of Unsecured Creditors, if any, not later than 5:00 p.m. (Eastern) on Friday, August 26, 2011 (the "<u>Bid Deadline</u>").

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>." The Debtor shall provide notice of any Qualified Bid to the Purchaser, the Official Committee of Unsecured Creditors, if any, and the Office of the United States Trustee within two (2) business days of qualifying a Bid. For the avoidance of doubt, the Stalking Horse Agreement shall constitute a Qualified Bid by the Purchaser and the Purchaser shall be deemed a Qualified Bidder. The Purchaser shall have standing to contest the Debtor's determination of each Qualified Bid and Qualified Bidder.

In the event that any Bid is determined by the Debtor not to be a Qualified Bid, the Debtor shall notify such Bidder, the Office of the United States Trustee and the Official Committee of Unsecured Creditors, if any, that such Bid was determined not to be a Qualified Bid.

## Access to Due Diligence Materials

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets that are the subject of the Auction prior to making any such Bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder or the Stalking Horse Agreement.

Any access or information made available to any Bidders or Qualified Bidders not previously made available to the Purchaser shall be promptly provided to the Purchaser.

## Due Diligence From Bidders

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its agents regarding each such Bidder and its contemplated transaction. Failure by a Bidder to comply with the requests for additional information and due diligence access shall be a basis for the Debtor to determine that such Bidder is not a Qualified Bidder. Failure by a potential or Qualified Bidder to comply with requests for additional information and due diligence access shall be a basis for the Debtor to determine that a Bid made by such Bidder is not a Qualified Bid. Notwithstanding anything to the contrary contained herein, the Purchaser shall not be required to furnish any additional information or other diligence pursuant to this paragraph.

## Auction

If one (1) or more Qualified Bids are submitted in accordance with the Bidding Procedures Order, the Debtor will conduct an auction (the "Auction") on Friday, September 2, 2011, in accordance with the Bidding Procedures Order; and at such Auction, the Debtor shall have the right to select the highest or best Bid from the Purchaser and any Bidder who submitted a Qualified Bid (the "Highest or Best Bid" and the Bidder submitting such Highest or Best Bid, the "Successful Bidder"), which will be determined by considering, among other things: (1) the number, type and nature of any changes to the Stalking Horse Agreement requested by each Bidder; (2) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to the Debtor of such modifications or delay; (3) the total consideration to be received by the Debtor; (4) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (5) the net benefit to the estate (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Stalking Horse Agreement) is received by the Bid Deadline, the Debtor shall not conduct the Auction and shall designate the Stalking Horse Agreement as the Highest or Best Bid for the purposes of these Bidding Procedures.

No later than the commencement of the Auction, the Debtor will notify all Qualified Bidders of the highest and best Qualified Bid, as determined in the Debtor's discretion (the "Baseline Bid"), and provide copies of the Baseline Bid to all Qualified Bidders.

The Auction shall be conducted at the offices of Reed Smith LLP, 1201 Market Street; Suite 1500; Wilmington, DE 19801 (the "Auction Site") at 10:00 a.m. (prevailing Eastern Time) on September 2, 2011 (the "Auction Date"), or such other place and time as the Debtor shall notify the Official Committee of Unsecured Creditors, if any, the Office of the United States Trustee, the Purchaser and all Qualified Bidders who have submitted Qualified Bids and expressed an intent to participate in the Auction and all creditors that have contacted counsel to the Debtor expressing an intention to attend the Auction. Prior to moving the Auction Date, the Debtor shall consult with the Purchaser and the Official Committee of Unsecured Creditors, if any. The Auction shall be conducted according to the following procedures:

(a)     The Debtor Shall Conduct the Auction.

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be made and received on an open basis, and all material terms of each such Bid shall be fully disclosed to all Qualified Bidders. The Debtor shall maintain a transcript of all Bids made and announced at the Auction.

(b)     Overbid Amount; Minimum Bid Increment.

There shall be an overbid amount (the "Overbid Amount") that a Qualified Bidder must bid to exceed the Purchaser's Bid, and that amount shall include a cash payment at closing that is not less than the sum of (A) the Credit Bid Amount and the Cure Amounts and (B) $50,000 in cash, provided, however, any overbid bids by the Purchaser thereafter shall be in an amount or amounts determined from time to time by the Debtor in its discretion.

(c)     Purchaser's Rights at Auction.

The Purchaser has the right to submit further bids along with a markup of the Stalking Horse Agreement, and at any time, request that the Debtor announce, subject to any potential new bids, the then current Highest or Best Bid, and to the extent the Purchaser requests, use reasonable efforts to clarify any and all questions the Purchaser may have regarding the Debtor's announcement of the then current Highest or Best Bid. The Purchaser shall have standing to contest the Highest or Best Bid selected by the Seller.

(d)     Backup Bidder.

Following the approval of the Sale of all or substantially all of the Acquired Assets to the Successful Bidder at the Sale Hearing, if the Debtor fails to consummate an approved Sale with the Successful Bidder, the Debtor shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Sale Hearing, the Highest or Best Bid, and the Debtor (in consultation with the Official Committee of Unsecured Creditors, if any) shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such bid without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until the first business day following the consummation of a Sale of the Acquired Assets to the Successful Bidder.

(e)     Consent to Jurisdiction as Condition to Bidding.

The Purchaser and all Bidders (including all Qualified Bidders at the Auction) shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents. To the extent the Purchaser is not the Successful Bidder, the Purchaser shall have standing to contest the highest and best Qualified Bid chosen by the Debtor.

(f)     Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtor determines in the exercise of its business judgment, after consultation with any financial and legal advisors, is the Highest or Best Bid.  In making this decision, the Debtor, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria.  The Auction shall not close unless and until all Bidders (who submitted Qualified Bids, remain present at the Auction and have not previously dropped out of the bidding) have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing Highest or Best Bid.  The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

(g)     No Collusion; Good Faith Bona Fide Offer.

Each Qualified Bidder participating at the Auction will be required to confirm that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed Sale if selected as the Successful Bidder.

## Cure Procedures

The Debtor filed a notice (the "Assumption and Cure Notice") identifying (i) those Executory Contracts and Unexpired Leases which may be assumed and assigned to the Purchaser, its designee(s) or such other Successful Bidder, either on the Closing Date or on/or before the Designation Deadline, in connection with the Sale of the Acquired Assets and in accordance with the procedures proposed in the Motion; and (ii) the proposed cure amount for each Executory Contract and Unexpired Lease identified on the Assumption and Cure Notice.  The Debtor served the Assumption and Cure Notices on all non-debtor counterparties to the Executory Contracts and Unexpired Leases listed therein (the "Contract Counterparties").

The Assumption and Cure Notices stated the cure amounts that the Debtor believe are necessary to assume such Executory Contracts and Unexpired Leases pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify the Contract Counterparty that such party's Executory Contract or Unexpired Lease may be assumed, assigned and sold to a purchaser of the Acquired Assets to be identified at the conclusion of the Auction.  The Purchaser has separately filed a notice containing information with respect to the Purchaser's proposed adequate assurance of future performance and information regarding how a Contract Counterparty may obtain additional information regarding the Purchaser (the "Stalking Horse Adequate Assurance Information").

The deadline to object to any assignment and assumption or Cure Amount in the Assumption and Cure Notice is 4:00 p.m. (Eastern) on [_____ __], 2011.  The Debtor may amend the Assumption and Cure Notice with respect to any Cure Amount or to identify any additional Executory Contracts or Unexpired Leases that were omitted from the Cure Notices.  If the Debtor amends the Assumption and Cure Notices, any Contract Counterparties affected by the amendment must file any objection to the proposed assumption and assignment or the amended Cure Amount within fourteen (14) days after service of the amended Assumption and Cure Notice.

Objections, if any, to the Stalking Horse Adequate Assurance Information must be filed and served by the Sale Objection Deadline (as defined below). In the event that the Successful Bidder is not the Purchaser, objections regarding the Adequate Assurance Information submitted by the Successful Bidder may be raised orally at the Sale Hearing.

## Free of Any and All Liens, Claims and Interests

Except as otherwise provided in the Stalking Horse Agreement or the Successful Bidder's asset purchase agreement, all of the Debtor's right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens, Claims and Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Interests to attach to the net cash proceeds (if any) of the sale of the Acquired Assets with the same validity and priority as such Liens, Claims and Interests applied against the Acquired Assets.

## Sale Hearing

A hearing (the "Sale Hearing") will be held on **September 8, 2011 at** [_____] (Eastern), at which the Debtor will seek approval of the Sale to the Successful Bidder. Objections to the Sale to the Successful Bidder must be filed and served so that they are actually received by the Debtor, the Purchaser, the Official Committee of Unsecured Creditors, if any, and the Office of the United States Trustee no later than **4:00 p.m.** **(Eastern) on** [_____**, 2011**] (the "Sale Objection Deadline").

The Debtor, in the exercise of its business judgment[, in consultation with the Official Committee of Unsecured Creditors, if any, reserves its right to the extent consistent with the Stalking Horse Agreement, to change the date of the Sale Hearing in order to achieve the maximum value for the Acquired Assets.

## Modification of Bidding Procedures

The Debtor shall the authority (upon consultation with the Purchaser and the Official Committee of Unsecured Creditors, if any) to modify these Bidding Procedures as the Debtors determine in the business judgment will maximize the value of the Acquired Assets or is otherwise fair and appropriate.

## Credit Bidding

Purchaser shall be entitled to credit bid the amount outstanding under the DIP Facility, plus the outstanding amount, or any portion thereof, of the Pre-Petition Obligations for the Acquired Assets pursuant to section 363(k) of the Bankruptcy Code. Any other creditor that desires to exercise its right to credit bid under section 363(k) of the Bankruptcy Code shall comply with all the Bidding Procedures set forth herein to qualify as a Qualified Bidder and submit a Qualified Bid. Without limiting the foregoing, and, in the case of clause (c) below, except for any credit bid by Imperium or the Purchaser, any credit bid must include (a) a description of the assets to be purchased that are not subject to a valid and perfected

security interest (such Acquired Assets that are not subject to a valid and perfected security interest of the bidder, the "Unencumbered Assets"); (b) cash (in addition to any other cash required by these Bidding Procedures) to be delivered at closing or the assumption of liabilities sufficient to pay the fair value of the Unencumbered Assets; and (c) a letter setting forth the legal and factual bases on which the party submitting the credit bid believes the submission of the credit bid by such party is authorized by the relevant loan documents and applicable law. For the avoidance of doubt, nothing in these Bidding Procedures shall impair or modify the rights and obligations of the Purchaser under the terms of the Stalking Horse Agreement.

# EXHIBIT 2

**(Sale Notice)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

Entelos, Inc.,[1]

Debtor.

)
)
)
)
)
)
)
)
)

Chapter 11

Case No.: 11-_____ (_____)

## NOTICE OF (A) SALE OF CERTAIN ASSETS FREE AND CLEAR
## OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (B) REQUEST
## FOR AUTHORIZATION RELATING TO THE ASSUMPTION AND ASSIGNMENT
## OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

PLEASE TAKE NOTICE THAT, pursuant to the *Order (A) Approving Bidding Procedures, and (B) Approving the Form and Manner of Notices Thereof* (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on [_____ ___,] 2011, Entelos, Inc. (the "Debtor") is selling substantially all of its assets (the "Acquired Assets") related to the Debtor's business free and clear of all Liens, Claims and Interests to the fullest extent allowable under the Bankruptcy Code and assuming, assigning and selling certain executory contracts and unexpired leases.[2]

1.     All documents filed with the Bankruptcy Court in connection with these chapter 11 cases and the proposed Sale, including the Motion, the Bidding Procedures Order, the Bidding Procedures, the Stalking Horse Agreement and the Stalking Horse Adequate Assurance Notice[3], or, if applicable, the adequate assurance information of other Bidders, are available by

---

[1] The last four digits of the debtor's federal tax identification number are 5818.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the bidding procedures approved as part of the Bidding Procedures Order.

[3] Pursuant to the Bidding Procedures Order, the Purchasers shall file the Stalking Horse Adequate Assurance Notice with the Bankruptcy Court by no later than [_____], 2011.

accessing the Court's docket, https://ecf.deb.uscourts.gov, or contacting [_____] at [_____].

2. Any entity that wishes to participate in the Bidding Process must deliver (unless previously delivered) the materials set forth below (via email in .pdf or similar format) (the "Required Bid Materials") to the following parties (i) the Debtor (Entelos, Inc.; 110 Marsh Drive Foster City, California 94404) (attn: Shawn O'Connor, CEO); (ii) counsel to the Debtor, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (attn: Kurt F. Gwynne, Esq.); and (iii) counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.) (provided, however, that confidential information with respect to financing sources need not be provided to the Purchaser); and (vi) counsel to the Official Committee of Unsecured Creditors, if any, so as to be received by such parties not later than **5:00 p.m. (Eastern) on August 26, 2011** (the "Bid Deadline"). The Required Bid Materials shall include:

(i)   Minimum Bid Amount.  Any Qualifying Bid (other than the Stalking Horse Agreement) at the Auction must be higher and better than the offer of the Purchaser under the Stalking Horse Agreement and that is not less than the sum of (A) the Credit Bid Amount and the Cure Amounts in cash; and (B) $50,000 in cash (the "Minimum Bid Amount").

(ii)  Acquired Assets. Any Qualifying Bid must seek to acquire substantially all of the Acquired Assets;

(iii) Same or Better Terms.  The Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the Stalking Horse Agreement.  A Bid must include executed transaction documents (the "Competing Transaction Documents") pursuant to which the Bidder proposes to effectuate a competing transaction (a "Competing Transaction").  A Bid shall include a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to the Purchase Price);

2

(iv)    <u>Identity</u>.  All Bids must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation;

(v)    <u>Contingencies</u>.  A Bid may not be conditioned on (i) obtaining financing or any internal approval or (ii) on the outcome or review of due diligence;

(vi)    <u>Proof of Financial Ability to Perform</u>.  A Bid (other than the Stalking Horse Agreement) must provide written evidence that the Debtor reasonably concludes demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under the Acquired Contracts to be assumed and assigned in the Competing Transaction.  Such information should include, among other things, the following:

    (a)    contact names and telephone numbers for verification of financing sources;

    (b)    evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

    (c)    the Bidder's current financial statements (audited if they exist and, if unaudited, most recent audited financial statements); and

    (d)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the Competing Transaction;

(vii)    <u>Irrevocable</u>.  A Bid made by any Bidder other than the Purchaser must be irrevocable through the Auction; <u>provided</u> that if such Bid is accepted as the Highest or Best Bid or the Backup Bid (as defined in the Bidding Procedures), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures;

(viii)    <u>Identification of Executory Contracts and Unexpired Real Property Leases</u>.  The Bid shall identify with particularity the Debtor's executory contracts and unexpired leases with respect to which the Bidder seeks to receive an assignment and any designation rights;

(ix)    <u>Corporate Authority</u>.  Written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to

3

consummate the proposed Competing Transaction; <u>provided</u> that if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor and the Purchaser of the approval of the Competing Transaction by the equity holder(s) of such Bidder; and

(x)     <u>Adequate Assurance Information</u>. The Bid shall include sufficient financial or other information (the "<u>Adequate Assurance Information</u>") to establish adequate assurance of future performance with respect to any lease or contract to be assumed and assigned to the Bidder in connection with the proposed transaction and Bidder's agreement that such Adequate Assurance Information can be faxed or emailed to any counterparties to such contracts or leases (or their counsel) within 24 hours of submission of the Bid; provided, however, that the counterparties to such contracts and leases must keep any information marked in the Adequate Information as confidential (the "<u>Confidential Information</u>") provided that the Confidential Information may be referred to and quoted in any hearing before the Bankruptcy Court held to consider the assumption and assignment of such contract or lease and further provided, however, that to the extent that any party desires to introduce the Confidential Information as an exhibit at any hearing, such party shall request that the Bankruptcy Court treat the Confidential Information as confidential, unless the Debtor and the applicable Bidder have agreed that such confidential treatment by the Bankruptcy Court is not necessary. The Bid shall also identify a contact person (with relevant contact information) that counterparties to any lease or contract can contact to obtain additional Adequate Assurance Information.

3.     If a Qualified Bid, other than that submitted by the Purchaser, has been received by the Debtor, the Debtor may conduct an auction (the "<u>Auction</u>") with respect to all or some of the Acquired Assets. The Auction shall be conducted at the offices of Auction shall be conducted at the offices of Reed Smith LLP, 1201 Market Street; Suite 1500; Wilmington, DE 19801 at **10:00 a.m. (Eastern) on September 2, 2011**, or such other place and time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above. The Debtor shall provide notice to the

4

following parties upon any change in the date, time or place of the Auction: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Purchaser, (c) any other Qualified Bidder, (d) counsel to the Official Committee of Unsecured Creditors, if any, and (e) any creditor that has indicated to counsel to the Debtor that it wishes to attend the Auction.

4.    A hearing to approve the Sale (the "Sale Hearing") to the Successful Bidder will be held at [_____] **a.m. (Eastern) on September 8, 2011** unless otherwise continued pursuant to the terms of the Bidding Procedures. The Sale Hearing will be held before the Honorable [_____], United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, [__]th Floor, Courtroom [__], Wilmington, Delaware 19801. Objections, if any, to any Sale, to the assumption and assignment of a party's executory contract and/or unexpired lease, or to that portion of the Motion that seeks to extend the deadline to assume or reject unexpired leases, must be filed by **4:00 p.m. (Eastern) on** [_____] (the "Sale Objection Deadline"). At the same time, you must also serve a copy of the objection, **so as to be received by the following parties on or before the Sale Objection Deadline**: (i) the Debtor's counsel, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (attn: Kurt F. Gwynne, Esq.); (ii) the Debtor (Entelos, Inc.; 110 Marsh Drive Foster City, California 94404) (attn: Shawn O'Connor, CEO); (iii) the counsel for the Official Committee of Unsecured Creditors, if any; (iv) counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.); and (v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (attn: David Klauder, Esq.) (Facsimile: 302-573-6497).

5

5.   IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: _____, 2011
       Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Timothy P. Reiley
    Kurt F. Gwynne (No. 3951)
    Richard A. Robinson (No. 5059)
    Timothy P. Reiley (No. 5435)
    1201 Market Street; Suite 1500
    Wilmington, DE 19801
    Phone: (302) 778-7500
    Fax: (302) 778-7575
    Email: kgwynne@reedsmith.com
           rrobinson@reedsmith.com
           treiley@reedsmith.com

Proposed Attorneys for Debtor in Possession

1930855.2

# EXHIBIT 3

## (Assumption and Cure Notice)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          )        **Chapter 11**
                                                )
**Entelos, Inc.,**[1]                           )        **Case No.: 11-_____ (____)**
                                                )
                        **Debtor.**             )
                                                )
                                                )
                                                )

## NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH MAY BE ASSUMED AND ASSIGNED, PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO

PLEASE TAKE NOTICE THAT:

1.      On [_____], 2011, Entelos, Inc. (the "Debtor") filed a Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365, and Bankruptcy Rules 2002, 6004, and 6006 for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Substantially All of the Debtor's Assets; (B) Scheduling an Auction and Sale Hearing; (C) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assigned; and (D) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Establishing Assumption and Rejection Procedures for Certain Additional Executory Contracts and Unexpired Leases [Docket No. __] (the "Motion")[2] with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Court").

2.      Pursuant to the Motion, the Debtor seek the entry of an order (i) establishing bidding and auction procedures in connection with the sale of substantially all of the Debtor's assets (the "Acquired Assets"); (ii) scheduling an auction (the "Auction") and setting a date and time for a sale hearing (the "Sale Hearing") (tentatively scheduled for **September 8, 2011 at [_____]** (Eastern) for the sale of the Acquired Assets (the "Sale"), and approving the form and manner of notice thereof; (iv) establishing procedures (the "Assumption and Cure Procedures") for the assumption, assignment, and sale of executory contracts ("Contracts") and unexpired leases ("Unexpired Leases"), including notice of proposed cure amounts; and (v) granting certain related relief. By the Motion, the Debtor further request that at the Sale Hearing, subject to the results of the Auction, this Court enter a sale order (i) approving and authorizing the Sale; and (ii) authorizing the assumption and assignment of the Contracts and Unexpired Leases.

---

[1] The last four digits of the debtor's federal tax identification number are 5818.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

US_ACTIVE-106817407.2

3. In accordance with the Assumption and Cure Procedures, the Debtor hereby files this notice (the "Assumption and Cure Notice") identifying (i) those Contracts and Unexpired Leases which may be assumed and assigned to the Purchaser, its designee(s) or such other Successful Bidder, either on the Closing Date or on/or before the Designation Deadline, in connection with the Sale of the Acquired Assets and in accordance with the procedures proposed in the Motion; and (ii) the proposed cure amount (the "Cure Amount") for each Contract and Unexpired Lease identified on the Assumption and Cure Notice.

4. Further adequate assurance information for the Purchaser (the "Stalking Horse Adequate Assurance Information") is available by contacting counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.).

5. You have been identified as a party to a Contract or Unexpired Lease that the Debtor may seek to assume and/or assign. The Contract or Unexpired Lease with respect to which you have been identified as a non-debtor counterparty, and the corresponding proposed Cure Amount (as of the date of this Assumption and Cure Notice), is set forth in attached **Exhibit 1**. The Debtor's records reflect that all postpetition amounts owing under your Contract or Unexpired Lease have been paid and will continue to be paid until the assumption and assignment or rejection of the Contract or Unexpired Lease, and that (as of the date of this Assumption and Cure Notice) there are no other defaults under the Contract or Unexpired Lease other than the Cure Amount.

6. Objections, if any, to the proposed assignment and assumption, the Cure Amount or the Stalking Horse Adequate Assurance Information must be made in writing, filed with the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served so as to be received by the Debtor, counsel for the Debtor, and counsel to the Purchaser on or before **4:00 p.m. (Eastern) on [insert fourteenth day after the date of this notice]** (the "Cure Objection Deadline"). Service should be made by mail to: (i) counsel to the Debtor, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (attn: Kurt F. Gwynne, Esq.), (ii) the Debtor (Entelos, Inc.; 110 Marsh Drive Foster City, California 94404) (attn: Shawn O'Connor, CEO); and (iii) counsel to the Purchaser, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (attn: Jonathan N. Helfat, Esq.) (collectively, the "Notice Parties"). The objection must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the Cure Amount, if applicable, and (iii) sufficient documentation to support the Cure Amount alleged, if applicable.

7. If an objection is timely filed, a hearing with respect to the objection will be held at the Sale Hearing or at a later hearing, as determined by the Debtor in consultation with the Court. A hearing regarding the Cure Amount, if any, may be continued at the sole discretion of the Debtor.

8. UNLESS YOU TIMELY FILE AN OBJECTION TO (A) THE PROPOSED ASSUMPTION, ASSIGNMENT AND SALE OF THE CONTRACT OR UNEXPIRED LEASE AND/OR (B) THE PROPOSED CURE AMOUNT SET FORTH IN **EXHIBIT 1** AND SERVE SUCH OBJECTION IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU WILL BE FOREVER BARRED FROM (I) OBJECTING TO THE ASSUMPTION, ASSIGNMENT AND SALE OF THE EXECUTORY CONTRACT OR UNEXPIRED LEASE ACCEPTANCE, (II) OBJECTING TO THE CURE AMOUNT SET FORTH ON **EXHIBIT 1**, OR (III) ASSERTING OR CLAIMING ANY CURE AMOUNT AGAINST THE

DEBTOR, THE SUCCESSFUL BIDDER OR ANY OTHER ASSIGNEE OF THE RELEVANT CONTRACT OR UNEXPIRED LEASE, IN CONNECTION WITH THE SALE.

9.     The presence of a contract or agreement listed on attached **Exhibit 1** does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract will be assumed by the Debtor and assigned to the Successful Bidder.  The Debtor reserve all of its rights, claims and causes of action with respect to the contracts and agreements listed on **Exhibit 1**.

10.     The list of contracts and agreements attached as **Exhibit 1** does not include (i) any purchase orders or agreements between the Debtor and their customers relating to the purchase of the Debtor's manufactured products, (ii) any general warranty agreements offered by the Debtor to its customers in connection with the sale of the Debtor's products or (iii) any maintenance agreements or programs between the Debtor and its customers (collectively, the "Customer Agreements").  **The Debtor do, however, intend to honor the Customer Agreements in the ordinary course of business consistent with the relief previously granted by the Court**.  To the extent any of the Customer Agreements do constitute executory contracts subject to section 365 of the Bankruptcy Code, the Debtor submit that the Cure Amounts with respect to such Customer Agreements is $0.  In the event that a party to such Customer Agreements believes that their respective Customer Agreement is an executory contract subject to section 365 of the Bankruptcy Code and disagrees with the Cure Amount proposed by the Debtor in this paragraph, then such party may serve (and not file with the Court) an objection to the proposed Cure Amount on the above Notice Parties, which the Debtor will then file with the Court along with a motion requesting that any confidential customer information be filed under seal.

Dated: [_____], 2011
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Timothy P. Reiley
    Kurt F. Gwynne (No. 3951)
    Richard A. Robinson (No. 5059)
    Timothy P. Reiley (No. 5435)
    1201 Market Street; Suite 1500
    Wilmington, DE 19801
    Phone:  (302) 778-7500
    Fax:  (302) 778-7575
    Email: kgwynne@reedsmith.com
           rrobinson@reedsmith.com
           treiley@reedsmith.com

Proposed Attorneys for Debtor in Possession

1930855.2

# EXHIBIT 1

## (SCHEDULE OF CONTRACT/ LEASE CURE AMOUNTS)