# EXHIBIT A

## RATIFICATION AND SUPPLEMENTAL CREDIT AGREEMENT

This RATIFICATION AND SUPPLEMENTAL CREDIT AGREEMENT (this "*Agreement*") dated as of July __, 2011, is by and among Imperium Master Fund, Ltd. ("*Imperium*"), Imperium Advisers, LLC, in its capacity as collateral agent for Imperium (in such capacity, "*Collateral Agent*"), Entelos, Inc., as Debtor and Debtor-in-Possession (the "*Company*" or "*Debtor*"), Entelos (UK) Ltd. ("*Entelos UK*"), Eratosethes, Inc. ("*Eratosethes*") and Digitalself, Inc. ("*DigitalSelf*" and together with Entelos UK and Eratosethes, the "*Guarantors*").

### W I T N E S S E T H:

WHEREAS, the Debtor has commenced a case (the "*Chapter 11 Case*") under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*"), and the Debtor has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case, Imperium made loans to Debtor, secured by substantially all assets and properties of Debtor and Guarantors, as set forth in the Existing Promissory Notes and the Existing Financing Agreements (as each term is defined below); and

WHEREAS, the Bankruptcy Court has entered a Financing Order (defined below) pursuant to which Imperium may make a post-petition loan to Debtor, secured by substantially all the assets and properties of Debtor, as set forth in the Financing Order and this Agreement.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Imperium, Collateral Agent, Debtor and Guarantors mutually covenant, warrant and agree as follows:

1. DEFINITIONS.

   1.1 Interpretation. All terms not specifically defined herein, and which are defined in the Uniform Commercial Code as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

   1.2 Definitions. As used herein, the following terms shall have the respective meanings given to them below:

   (a) "*Budget*" shall mean the budget annexed to this Agreement as Exhibit A hereto, together with any subsequent and/or amended Budget prepared by the Debtor and acceptable to Imperium.

(b) *"Collateral"* shall mean, collectively, the Pre-Petition Collateral and Post-Petition Collateral.

(c) *"Existing Promissory Notes"* shall mean, collectively, (i) Senior Term Note, dated April 15, 2010, by Debtor in favor of Imperium in the original principal amount of $6,000,000, (ii) Supplemental Term Note, dated June 2, 2011, by Debtor in favor of Imperium in the original principal amount of $500,000, (iii) Second Supplemental Term Note, dated June 24, 2011, by Debtor in favor of Imperium in the original principal amount of $850,000, in each instance, as in effect immediately prior to the Petition Date and (iv) Secured Term Promissory Note, dated July 22, 2011, by Debtor in favor of Imperium in the original principal amount of $300,000.

(d) *"Existing Financing Agreements"* shall mean the Financing Agreements as in effect immediately prior to the Petition Date.

(e) *"Final Order"* shall mean an Order of the Bankruptcy Court, in form and substance satisfactory to Impreium, authorizing the granting of credit by Imperium to Debtor on a permanent basis pursuant to Section 364 of the Bankruptcy Code in accordance with the terms of this Agreement and the other Financing Agreements.

(f) *"Financing Agreements"* shall mean, collectively, (i) the Existing Promissory Notes, (ii) the Security Agreement, (iii) the Financing Order, (iv) this Agreement and (v) all other agreements, documents or instruments at any time executed in connection with, or referenced in, any of the foregoing, in each instance, as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(g) *"Financing Order"* shall mean the Interim Order and, as applicable, the Final Order.

(h) *"Interim Order"* shall mean an Order of the Bankruptcy Court, in form and substance satisfactory to Impreium, authorizing the granting of credit by Imperium to Debtor on an emergency or interim basis pursuant to Section 364 of the Bankruptcy Code in accordance with the terms of this Agreement and the other Financing Agreements.

(i) *"Obligations"* shall mean, collectively, all Pre-Petition Obligations and all Post-Petition Obligations.

(j) *"Petition Date"* shall mean the date of the commencement of the Chapter 11 Case.

(k) *"Post-Petition Collateral"* shall mean, collectively, all now existing and hereafter acquired real and personal property of each Guarantor and of Debtor's estate, wherever located, of any kind, nature or description, including any such property in which a lien is granted to Imperium pursuant to the Financing Agreements, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

(i) all of the Pre-Petition Collateral;

(ii) all accounts;

(iii) all general intangibles, including, without limitation, all Intellectual Property (as defined in the Security Agreement), contracts and contract rights;

(iv) all goods, including, without limitation, all inventory and all equipment;

(v) all real property and fixtures;

(vi) all chattel paper, including, without limitation, all tangible and electronic chattel paper;

(vii) all instruments, including, without limitation, all promissory notes;

(viii) all documents;

(ix) all deposit accounts;

(x) all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

(xi) all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of accounts and other Collateral, including, without limitation, (A) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (B) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (C) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, accounts or other Collateral, including returned, repossessed and reclaimed goods, and (D) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(xii) all (A) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (B) monies, credit balances, deposits and other property of Debtor now or hereafter held or received by or in transit to Imperium, Collateral Agent or their respective affiliates, or at any other depository or other institution from or for the account of Debtor or any Guarantor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiii) all commercial tort claims;

(xiv) all records; and

(xv) all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or

destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

(l) "***Post-Petition Obligations***" shall mean all obligations, liabilities and indebtedness of every kind, nature and description owing by Debtor and Guarantors to Imperium and Collateral Agent, including principal, interest, charges, fees, costs and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising on or after the Petition Date under this Agreement or any of the other Financing Agreements.

(m) "***Pre-Petition Collateral***" shall mean all "Collateral" as such term is defined in the Security Agreement as in effect immediately prior to the Petition Date.

(n) "***Pre-Petition Obligations***" shall mean all obligations, liabilities and indebtedness of every kind, nature and description owing by Debtor and Guarantors to Imperium and Collateral Agent, including principal, interest, charges, fees, costs and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising prior to the Petition Date under the Existing Promissory Notes or any of the other Existing Financing Agreements.

(o) "***Security Agreement***" shall mean the Amended and Restated Security Agreement, dated April 15, 2010, by and among Debtor, certain direct and indirect subsidiaries of Debtor, and Collateral Agent, as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(p) "***Third Supplemental Term Loan***" shall mean a term loan up to the amount of the Third Supplemental Term Loan Limit to be advanced by Imperium to Debtor pursuant to the terms and conditions of this Agreement.

(q) "***Third Supplemental Term Loan Limit***" shall mean $_____

1.3 Amendment to Existing Definition. All references in the Security Agreement to the term "Obligations" shall be deemed, and each such reference is hereby amended to mean, both the Pre-Petition Obligations and the Post-Petition Obligations.

2. ACKNOWLEDGMENT.

2.1 Pre-Petition Obligations. Debtor and each Guarantor hereby acknowledges, confirms and agrees that, as of the date of this Agreement, Debtor is indebted to Imperium and Collateral Agent in respect of all Pre-Petition Obligations in the aggregate amount of not less than $8,442,000, inclusive of interest accrued through July 22, 2011, plus interest accruing thereafter and all costs, expenses, fees (including attorneys' fees and legal expenses) and other charges now or hereafter owed by Debtor to Imperium and Collateral Agent in connection with the Existing Financing Agreements, all of which are unconditionally owing by Debtor Imperium and Collateral Agent, without offset, defense or counterclaim of any kind, nature and description whatsoever.

2.2 Acknowledgment of Security Interests. Debtor and each Guarantor hereby acknowledges, confirms and agrees that Collateral Agent, for the benefit of itself and Imperium,

has and shall continue to have valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral to secure all of the Pre-Petition Obligations, subject only to liens or encumbrances expressly permitted by the Security Agreement and any other liens or encumbrances expressly permitted by the Financing Order that may have priority over the liens in favor of Collateral Agent and Impreium.

2.3     Binding Effect of Documents. Debtor and each Guarantor acknowledges, confirms and agrees that: (a) each of the Existing Financing Agreements to which it is a party was duly executed and delivered to Imperium and Collateral Agent by such Debtor or Guarantor, as the case may be, and is in full force and effect as of the date hereof, (b) the agreements and obligations of Debtor and Guarantors contained in the Existing Financing Agreements constitute the legal, valid and binding obligations of Debtor and Guarantors, enforceable against Debtor and Guarantors in accordance with the terms thereof, and Debtor and Guarantors have no valid defense, offset or counterclaim to the enforcement of such obligations, and (c) Imperium and Collateral Agent are and shall be entitled to all of the rights, remedies and benefits provided for in the Existing Financing Agreements and the Financing Order.

3.     ADOPTION AND RATIFICATION

Debtor and each Guarantor hereby (a) ratifies, assumes, adopts and agrees to be bound by all of the Existing Financing Agreements to which it is a party, (b) ratifies, restates, affirms and confirms all of the terms and conditions of the Existing Financing Agreements and (c) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of the Existing Promissory Notes and other Existing Financing Agreements, and in accordance with the Financing Order. All of the Existing Promissory Notes and Existing Financing Agreements are hereby incorporated herein by reference and hereby are and shall be deemed adopted and assumed in full by Debtor, as Debtor and Debtor-in-Possession, and by each Guarantor.

4.     GRANT OF SECURITY INTEREST.

As collateral security for the prompt performance, observance and payment in full of all of the Obligations (including the Pre-Petition Obligations and the Post-Petition Obligations), Debtor, as Debtor and Debtor-in-Possession, and each Guarantor hereby grants, pledges and assigns to Collateral Agent, for the benefit of Imperium, continuing security interests in and liens upon, and rights of setoff against, all of the Collateral. Notwithstanding anything to the contrary contained herein, the Collateral shall not include any avoidance actions under Chapter 5 of the Bankruptcy Code.

5.     THIRD SUPPLEMENTAL TERM LOAN.

5.1     Third Supplemental Term Loan. Subject to the terms and conditions of the Financing Order, this Agreement and the other Financing Agreements, Imperium agrees to advance to Debtor the Third Supplemental Term Loan; provided, that, (a) the Third Supplemental Term Loan shall be disbursed to Debtor in the amounts and at the times set forth in the Budget, (b) in no event shall the aggregate outstanding principal amount of the Third Supplemental Term Loan exceed the Third Supplemental Term Loan Limit, (c) the outstanding principal amount of the Third Supplemental Term Loan shall accrue interest at an annual rate

equal to twelve percent (12%) prior to the occurrence of an Event of Default and fifteen percent (15%) from and after the occurrence of an Event of Default, in each instance, computed on the basis of a 360-day year, (d) if not sooner repaid or demanded, the Third Supplemental Term Loan, together with interest accrued thereon, shall be due and payable on the Termination Date (as defined below) and (e) upon the occurrence of an Event of Default, Imperium shall have no obligation to make, and Debtor shall not request or have any right to receive, any further disbursements of the Third Supplemental Term Loan.

5.2     Use of Proceeds.  All proceeds of the Third Supplemental Term Loan shall be used by ~~Debtor for general operating and working capital purposes in the ordinary course of business of~~ Debtor in accordance with the Budget.  Unless authorized by the Bankruptcy Court and approved by Imperium in writing, no portion of any administrative expense claim or other claim relating to the Chapter 11 Case shall be paid with the proceeds of such Third Supplemental Term Loan, other than administrative expense claims and other amounts in accordance with the Budget.

6.     APPLICATION OF PAYMENTS.

Notwithstanding anything to the contrary contained in the Financing Agreement, Collateral Agent and Imperium may, in their discretion, apply any payments or proceeds of Collateral first to the Pre-Petition Obligations until such Pre-Petition Obligations are paid and satisfied in full.

7.     TERM OF FINANCING.

Notwithstanding anything to the contrary contained in the Existing Promissory Notes or any other Financing Agreements, all Obligations shall, if not repaid sooner in accordance with the terms of the Financing Agreements, be immediately due and payable upon the earlier to occur of (a) fifty-five (55) days after the date of this Agreement, (b) the occurrence of an Event of Default ~~and~~, (c) the date of consummation of the Sale or (d) the last termination date set forth in the Interim Order, unless the Final Order has been entered prior to such date, and in such event, then the last termination date set forth in the Final Order (the earlier of such dates, the "*Termination Date*").

8.     BUDGET.

8.1     Debtor has delivered to Imperium a Budget which sets forth, among other information, projected aggregate weekly cash disbursements and cash receipts of Debtor.  Not later than 12:00 p.m. (Eastern time) on the Tuesday of each week, Debtor shall deliver or cause to be delivered to Imperium, in form and substance satisfactory to Imperium, a report that sets forth for the immediately preceding week a comparison of Debtor's actual cash disbursements and receipts for such week to Debtor's projected cash disbursements and receipts for such week as set forth in the Budget.  Any failure of Debtor to deliver any such report(s) shall constitute an Event of Default under this Agreement and the other Financing Agreements.

8.2     Debtor and each Guarantor hereby confirms, acknowledges and agrees that it shall constitute an Event of Default under this Agreement and the other Financing Agreements if, as of the end of each weekly period set forth in the Budget (each, a "*Test Date*"),

(a) the actual aggregate cash disbursements of Debtor from the first weekly period set forth in the Budget through the Test Date (the "*Test Period*) exceed one hundred and ten percent (110%) of the projected aggregate cash disbursements for such Test Period as set forth in the Budget or (b) the actual aggregate cash receipts of Debtor during such Test Period are less than ninety (90%) percent of the projected aggregate cash receipts for Test Period as set forth in the Budget.

9. 363 SALE PROCESS.

9.1 Sale Motion. Debtor has filed with the Bankruptcy Court a motion (the "*Sale Motion*") seeking (i) authority to sell substantially all its assets pursuant to an agreement in form and substance satisfactory to Imperium and otherwise on terms and conditions acceptable to Imperium (the "*Sale*") and (ii) approval of bid procedures for such Sale.

9.2 Bid Procedures. Debtor shall obtain the entry of an Order of the Bankruptcy Court, in form and substance satisfactory to Imperium, approving bid procedures acceptable to Impreium for such Sale, which bid procedures shall, among other things, authorize Imperium and Collateral Agent to participate at such Sale and to credit bid the Post-Petition Obligations and Pre-Petition Obligations in connection therewith (the "**Bid Procedures Order**").

9.3 Auction. Not later than forty (40) days after the date of this Agreement, Debtor shall hold an auction for the Sale in accordance with the terms of the Bid Procedures Order.

9.4 Sale Order. Not later than forty-five (45) days after the date of this Agreement, Debtor shall (i) obtain the entry of an Order of the Bankruptcy Court, in form and substance satisfactory to Imperium, approving the highest and best bid for the Sale in accordance with the terms of the Bid Procedures Order (the "**Sale Order**").

9.5 Sale Closing. Not later than ten (10) days following the entry the Sale Order, and in no event later than fifty-five (55) days after the date of this Agreement, Debtor shall cause the Sale to close and shall remit all of the net cash proceeds generated by such Sale to Imperium for application to the Pre-Petition Obligations and Post-Petition Obligations in such order and manner as Imperium may elect in its sole discretion.

9.6 Credit Bidding. The Debtor and each Guarantor hereby authorizes Collateral Agent and Imperium to (a) purchase at the Sale, or any other sale of Collateral conducted under the provisions of the Uniform Commercial Code or the Bankruptcy Code (including Section 363 of the Bankruptcy Code), all or any portion of the Collateral and (b) to credit bid all or any portion of the Obligations at any such sale of the Collateral.

9.7 Additional Event of Default. Any failure of Debtor to comply with this Section 9 shall constitute an additional Event of Default under this Agreement and the other Financing Agreements.

10. CASH MANAGEMENT.

Debtor shall, at Imperium's request, (a) establish and maintain, with such banks as are acceptable to Imperium, depository and/or blocked depository accounts into which Debtor shall

cause to be deposited all proceeds of Collateral in the identical form in which such proceeds are received (collectively, "**Blocked Accounts**") and (b) deliver to Imperium a deposit account control agreement, duly authorized, executed and delivered by Debtor and the depository bank at which any such Blocked Accounts are maintained.

11. EVENTS OF DEFAULT.

11.1 Events of Default. The occurrence or existence of any one or more of the following events shall constitute an "Event of Default" under this Agreement and the other Financing Agreement:

(a) any failure of Debtor or any Guarantor to comply with, or any breach by Debtor or any Guarantor of, the terms and conditions of this Agreement, the Third Supplement Promissory Note or any other Financing Agreement;

(b) the occurrence of any condition or event which permits Imperium and Collateral Agent to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in the Financing Order);

(c) the termination or non-renewal of the Financing Agreements as provided for in the Financing Order;

(d) Debtor or any Guarantor suspends or discontinues or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business, or a trustee, receiver or custodian is appointed for Debtor, any Guarantor or any of their respective properties;

(e) conversion of the Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(f) dismissal of the Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(g) the grant of a lien on or other interest in any property of Debtor or any Guarantor, other than a lien or encumbrance permitted by the Financing Order, which is superior to or ranks in parity with Imperium's and Collateral Agent's security interest in or lien upon the Collateral;

(h) the grant of an administrative expense claim in the Chapter 11 Case, other than such administrative expense claim permitted by the Financing Order, which is superior to or ranks in parity with Imperium's Superpriority Claim (as defined in the Financing Order);

(i) the Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of Imperium (and no such consent shall be implied from any other authorization or acquiescence by Imperium or Collateral Agent;

(j) the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(k) the appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code;

(l) the filing or confirmation of any plan of reorganization or liquidation, by or on behalf of the Debtor or any Guarantor, to which Imperium has not consented in writing, which does not provide for payment in full in cash of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein.

11.2 Remedies. Subject to the Financing Order, upon the occurrence of an Event of Default, Imperium and Collateral Agent shall have all rights and remedies provided in this Agreement, the other Financing Agreements, Financing Order and other applicable law, all of which rights and remedies may be exercised without notice to or consent by Debtor or any Guarantor, except as such notice or consent is expressly provided for under the Financing Order or required by applicable law.

12. RELEASE.

12.1 Release of Pre-Petition Claims.

(a) Upon the earlier of (i) the entry of the Final Order or (ii) the entry of an Order extending the term of the Interim Order beyond thirty (30) calendar days after the date of the Interim Order, in consideration of the agreements of Imperium and Collateral Agent contained herein, and the making of the Third Supplemental Term Loan by Imperium, Debtor and each Guarantor, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Imperium, Collateral Agent and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Imperium, Collateral Agent and all such other parties being hereinafter referred to collectively as the "*Releasees*" and individually as a "*Releasee*"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "*Pre-Petition Released Claim*" and collectively, "*Pre-Petition Released Claims*") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which any Debtor or Guarantor, or any of its respective successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with the Existing Promissory Notes and the Existing Financing Agreements.

(b) Upon the earlier of (i) the entry of the Final Order or (ii) the entry of an Order extending the term of the Interim Order beyond thirty (30) calendar days after the date of the Interim Order, Debtor and each Guarantor, on behalf of itself and its successors,

assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released, remised and discharged by Debtor and each Guarantor pursuant to this Agreement. If Debtor or any Guarantor violates the foregoing covenant, Debtor agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

12.2  Release of Post-Petition Claims. Upon (a) the receipt by Collateral Agent and Imperium of payment in full of all Obligations, and (b) the termination of the Financing Agreements, the Debtor and each Guarantor hereby covenants and agrees to execute and deliver in favor of Imperium and Collateral Agent a valid and binding termination and release agreement, in form and substance satisfactory to Imperium. If Debtor or any Guarantor violates such covenant, Debtor agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

13.  CONDITIONS PRECEDENT.

The effectiveness of this Agreement, and Imperium's obligation to fund the Third Supplemental Term Loan in accordance with the terms hereof, shall be subject to satisfaction of the following conditions precedent:

13.1  the receipt by Imperium of an original (or electronic copy) of this Agreement, duly authorized, executed and delivered by Debtor and each Guarantor;

13.2  the Bankruptcy Court shall have entered the Financing Order in form and substance satisfactory to Imperium;

13.3  the Debtor shall have filed the Sale Motion in form and substance satisfactory to Imperium; and

13.4  the Bankruptcy Court shall have entered the Bid Procedures Order in form and substance satisfactory to Imperium.

14.  MISCELLANEOUS.

14.1  Amendments and Waivers. Neither this Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

14.2  Further Assurances. Debtor and each Guarantor shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, including, without limitation, additional security agreements, collateral assignments, UCC financing statements or amendments or continuations thereof, landlord's or mortgagee's waivers of liens and consents to the exercise by Collateral Agent and Imperium of all the rights and remedies hereunder, under

any of the other Financing Agreements, any Financing Order or applicable law with respect to the Pre-Petition Collateral and Post-Petition Collateral, and do or use its best efforts to cause to be done such further acts as may be reasonably necessary or proper in Imperium's opinion to evidence, perfect, maintain and enforce the security interests of Collateral Agent and Imperium, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of this Agreement, any of the other Financing Agreements or the Financing Order. Upon the request of Imperium, at any time and from time to time, Debtor and each Guarantor shall, at its cost and expense, do, make, execute, deliver and record, register or file updates to the filings of Collateral Agent and Imperium with respect to the intellectual property with the United States Patent and Trademark Office, the financing statements, mortgages, deeds of trust, deeds to secure debt, and other instruments, acts, pledges, assignments and transfers (or use its best efforts to cause the same to be done) and will deliver to Imperium and Collateral Agent such instruments evidencing items of Collateral as may be requested by Imperium.

      14.3    <u>Headings</u>. The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this Ratification Agreement.

      14.4    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by telefacsimile or other method of electronic transmission shall have the same force and effect as the delivery of an original executed counterpart of this Agreement. In making proof of this Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties thereto.

      14.5    <u>Additional Events of Default</u>. The parties hereto acknowledge, confirm and agree that the failure of Debtor or any Guarantor to comply with any of the covenants, conditions and agreements contained herein or in any other agreement, document or instrument at any time executed by Debtor or any Guarantor in connection herewith shall constitute an Event of Default under the Financing Agreements.

      14.6    <u>Costs and Expenses</u>. In addition to all other fees and expenses payable by the Debtor to Imperium and Collateral Agent under the Financing Agreements, the Debtor shall reimburse Imperium and Collateral Agent for all costs and expenses, including legal fees and expenses, incurred by Imperium and Collateral Agent in the structuring, negotiation, arrangement or preparation of this Agreement, the Financing Order, the Financing Agreements and the agreements, documents and/or instruments to be executed in connection herewith or contemplated hereby. Such fees and expenses shall be added to the Post-Petition Obligations and shall be payable in accordance with the terms hereof.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

COLLATERAL AGENT

IMPERIUM ADVISERS LLC.

By: _____
Name: John Michaelson
Title: Director

DEBTOR

ENTELOS, INC.
as Debtor and Debtor-in-Possession

By: _____
Name: _____
Title: _____

IMPERIUM

IMPERIUM MASTER FUND, LTD.

By: _____
Name: John Michaelson
Title: Director

GUARANTORS

ENTELOS (UK) LTD.

By: _____
Name: _____
Title: _____

ERATOSETHES, INC.

By: _____
Name: _____
Title: _____

DIGITALSELF, INC.

By: _____
Name: _____
Title: _____

EXHIBIT A

Budget