# EXHIBIT A

# BILL OF SALE

This BILL OF SALE is made and entered into as of July ___, 2011 (this "Bill of Sale") by and between Entelos, Inc. ("Entelos", and together with its successors and assigns, the "Seller") and Imperium Master Fund, Ltd. ("Imperium") or its assignee or designee (together with its and their successors and assigns, the "Purchaser").

**WHEREAS**, Imperium and Seller have entered into financing arrangements pursuant to which, among other things, Imperium provided loans and other financial accommodations to Seller as set forth in (a) that certain Exchange Agreement, dated March 25, 2010, by and between Entelos and Imperium, (b) that certain Senior Term Note, dated April 15, 2010, by Entelos in favor of Imperium, in the original principal amount of $6,000,000, (c) that certain Supplemental Senior Term Note, dated June 2, 2011, by Entelos in favor of Imperium, in the original principal amount of $500,000, (d) that certain Second Supplemental Senior Note, dated June 24, 2011, by Entelos in favor of Imperium, in the original principal amount of $850,000, (e) that certain Secured Term Promissory Note, dated July 22, 2011, in the original principal amount of $300,000, and (f) that certain Amended and Restated Security Agreement, dated April 15, 2010, by and among Entelos, Entelos (UK) Ltd. ("Entelos UK"), Eratosethes, Inc. ("Eratosethes"), Digitalself, Inc. ("Digitalself", and together with Entelos, Entelos UK and Eratosethes, collectively, the "Entelos Entities"), Imperium and Imperium Advisers, LLC ("Collateral Agent"), and (f) all other agreements, documents and instruments executed and/or delivered in connection with the foregoing, in each case, as amended, modified, or supplemented from time to time (all of the foregoing, collectively, the "Pre-Petition Financing Agreements");

**WHEREAS**, as of July 22, 2011, the aggregate principal amount of all obligations, liabilities and other indebtedness owing by Seller to Imperium and Collateral Agent under and in connection with the Pre-Petition Financing Agreements was not less than $8,442,000 (inclusive of interest accrued though July 22, 2011), plus interest thereafter and all costs, fees, expenses (including reasonable attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is more fully defined in the DIP Facility Agreement (defined below), the "Pre-Petition Obligations").

**WHEREAS**, pursuant to the Pre-Petition Financing Agreements, Seller granted to Collateral Agent, for the benefit of Imperium, a continuing priority security interest in and general lien upon substantially all assets and properties of the Seller (collectively, the "Collateral") to secure the prompt payment and performance of all Pre-Petition Obligations;

**WHEREAS**, the Seller has filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, the Bankruptcy Court has approved the Seller entering into further financial arrangements with Imperium pursuant to which, among other things, Imperium has provided an additional post-petition loan to Seller in the amount determined pursuant to that certain Ratification and Supplemental Credit Agreement dated on or about the date thereof, by and among the Entelos Entities, Imperium, and Collateral Agent (the "DIP Facility Agreement");

1934624.2

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer hereby agree as follows:

1. Purchase. Subject to and effective upon the entry by the Bankruptcy Court of a final and non-appealable order approving the transactions contemplated herein (the day after entry of such order shall hereinafter be referred to as the "Closing Date"), and in consideration of Purchase Price (as defined herein), the Seller shall sell, transfer, grant, assign, deliver and convey to the Purchaser, free and clear of all liens, claims, interests, charges, mortgages, leases, hypothecations, deeds of trust, pledges, security interests, options, rights of setoff, first off or first refusal, easements, servitudes, restrictive covenants, encroachments, encumbrances, liabilities, commitments, or other similar restrictions of any kind pursuant to Section 363(f) of the Bankruptcy Code, other than the liens and security interest of Imperium and Collateral Agent securing the Pre-Petition Obligations, and the Purchaser shall purchase, acquire and take assignment and delivery of, all of the Seller's right, title and interest of every kind and nature (including indirect and other forms of beneficial ownership) in and to all of the properties, assets and rights (contractual or otherwise) of such Seller as of the Closing Date, whether tangible or intangible, real or personal and wherever located and by whomever possessed (the "Acquired Assets"), other than the Excluded Assets (as defined below).

2. Purchase Price. The aggregate consideration for the Acquired Assets (the "Purchase Price") shall equal the following, as calculated on the Closing Date: an amount equal to the sum of (i) [$_____] (an amount constituting some or all of the outstanding indebtedness owed by the Seller to Imperium pursuant to the Pre-Petition Financing Agreements and the DIP Facility Agreement, which such amount is to be paid as a credit bid), plus (ii) all Cure Amounts (as defined below) paid or to be paid by the Purchaser; plus (iii) the assumption of the Assumed Liabilities (as defined below).

3. Acquired Contracts. As of the Closing Date, the Seller shall assume pursuant to section 365(a) of the Bankruptcy Code and sell and assign to the Purchaser pursuant to sections 363(b), (f), and (m) and 365(f) of the Bankruptcy Code each of the executory contracts and unexpired leases listed on Schedule A hereto (the "Acquired Contracts"). The Purchaser shall assume and thereafter in due course pay, fully satisfy, discharge and perform (in addition to the Cure Amounts) (a) the obligations under the Acquired Contracts falling due or accruing between the date of the Assumption and Cure Notice and the Closing Date and (b) the obligations under the Acquired Contracts accruing after the Closing Date, and (c) all Pre-Petition Obligations arising under the Pre-Petition Financing Agreements (the "Assumed Liabilities"). If any default related to an Acquired Contract exists on the Closing Date, the Purchaser shall be responsible for and shall pay on the Closing Date the cure amounts that the Seller believes are necessary to assume such Executory Contracts and Unexpired Leases pursuant to section 365 of the Bankruptcy Code as of the date of the Assumption and Cure Notice (the "Cure Amount"). Purchaser shall have the right, at its option and in its sole discretion, ~~the~~to amend Schedule A hereto to remove or add any executory contracts or unexpired leases of the Seller ~~as provided in the Bidding Procedures Order~~(to the extent such Executory Contracts or Unexpired Leases already have not been rejected by the Debtor).

4. Assumption of Pre-Petition Obligations. Purchaser hereby assumes and agrees to be fully obligated, liable, indebted and responsible for all of the Pre-Petition Obligations in accordance with the terms of the Pre-Petition Financing Agreements. Purchaser hereby further acknowledges and agrees that the liens and security interests of Imperium and Collateral Agent

on and in the Acquired Assets (and all rights, claims and interests of Imperium and/or Collateral Agent attendant thereto, whether arising under the Pre-Petition Financing Agreements, applicable law or otherwise) securing the prompt payment and performance of all Pre-Petition Obligations shall remain and continue to be in full force and effect and enforceable against the Acquired Assets on and after the date hereof until such time as all Pre-Petition Obligations have been indefeasibly paid and satisfied in full on terms and conditions acceptable to Imperium. Purchaser hereby agrees to execute and/or deliver to Imperium and/or the Collateral Agent, at Purchaser's costs and expense, any and all agreements, amendments, documents and/or instruments required by Imperium or Collateral Agent in their discretion to more fully evidence the terms and conditions contained herein.

5. <u>Excluded Assets</u>. The Acquired Assets shall not include (a) the executory contracts and unexpired leases of the Seller that are not Acquired Contracts, (b) claims under chapter 5 of the Bankruptcy Code, or (c) any of the Seller's ~~litigation~~ commercial tort claims (the "<u>Excluded Assets</u>").

6. <u>Excluded Liabilities</u>. The Purchaser is assuming only the Assumed Liabilities and is not assuming, and shall not be the successor to, any other liability or obligation of the Seller or any predecessor or affiliate of Seller whatsoever, or any liability or obligation related to the Seller's respective businesses of any nature (either pre-petition or post-petition), including, without limitation, any direct or indirect indebtedness, guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation or responsibility, whether fixed or unfixed, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, due or to become due, choate or inchoate, liquidated or unliquidated, secured or unsecured. All such other liabilities and obligations shall be retained by, and remain liabilities and obligations of, the Sellers. For the avoidance of doubt, the Purchaser shall not assume any liabilities arising pursuant to or in connection with the Excluded Assets.

7. <u>No Representations or Warranties</u>. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE CONCERNING THE ACQUIRED ASSETS, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO THE ENVIRONMENTAL OR PHYSICAL CONDITION THEREOF, THE COMPLIANCE OF THE ACQUIRED ASSETS WITH ANY LAWS, RULES OR REGULATIONS, THE MERCHANTABILITY OR SUITABILITY OF THE ACQUIRED ASSETS FOR CURRENT USE OR PURCHASER'S PROPOSED USE, OR WITH RESPECT TO THE QUALITY OR VALUE OF THE ACQUIRED ASSETS. THE ACQUIRED ASSETS IS BEING SOLD "AS IS, WHERE IS", WITH ALL FAULTS, WITHOUT RECOURSE OF ANY KIND OR NATURE TO SECURED PARTY.

8. <u>Governing Law</u>. The validity of this Bill of Sale, and the construction, interpretation and enforcement hereof, shall be governed by and shall be construed and interpreted in accordance with the laws of the State of New York (without giving effect to principles of conflicts of law).

9. <u>Counterparts</u>. This Bill of Sale may be executed in multiple counterparts, each of which when executed shall constitute one and the same agreement.

IN WITNESS WHEREOF, Seller and Purchaser have executed and delivered this Bill of Sale on the date first above written.

<div style="margin-left:2em">

SELLER

ENTELOS, INC.

By:_____
Title:_____

PURCHASER

[IMPERIUM MASTER FUND, LTD.]

By:_____
Title:_____

</div>

# SCHEDULE A
# ACQUIRED CONTRACTS

Document comparison by Workshare Professional on Tuesday, July 26, 2011 2:39:58 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DIGITALFILE/US_ACTIVE/106821902/4 |
| Description | #106821902v4<US_ACTIVE> - 1934624 - V 2 - Bill of Sale (2).DOC |
| Document 2 ID | interwovenSite://DIGITALFILE/US_ACTIVE/106821902/5 |
| Description | #106821902v5<US_ACTIVE> - 1934624 - V 2 - Bill of Sale (2).DOC |
| Rendering set | ReedSmith Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 6 |