# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENTELOS, INC. [1] | ) | Case No. 11-12329 (PJW) |
| | ) | |
| Debtor. | ) | Re: Docket No. 12 5 1 8 |
| | ) | |

## ORDER (A) AUTHORIZING DEBTOR TO OBTAIN INTERIM POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364(c); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) AUTHORIZING DEBTOR TO ENTER INTO AGREEMENTS WITH IMPERIUM MASTER FUND, LTD.; AND (D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the *"Motion"*) of Entelos, Inc. (*"Debtor"*), as a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case (collectively, the *"Case"*), pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2) and 364(c)(3) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the *"Bankruptcy Code"*) and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), seeking, among other things:

(1)     authorization for Debtor to obtain a post-petition term loan, in the amount of $1.7 million (the *"Third Supplemental Term Loan"*), from Imperium Master Fund Ltd. (*"Imperium"*) and Imperium Advisers LLC, in its capacity as collateral agent (in such capacity, *"Collateral Agent"*), in accordance with all of the terms and conditions set forth in the Ratification and Supplemental Credit Agreement (as defined below), the Financing Agreements (as defined below) and this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

---

[1] The last four digits of the Debtor's tax identification number are 5818.

(2)     authorization for Debtor to enter into the Ratification and Supplemental Credit Agreement dated of even date herewith, by and among Debtor, its non-debtor affiliates, Imperium and Collateral Agent (the *"Ratification Agreement"*), a copy of which is annexed as Exhibit A hereto;

(3)     modification of the automatic stay to the extent hereinafter set forth;

(4)     the grant to Imperium of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Post-Petition Obligations (as defined in the Ratification Agreement); and

(5)     the scheduling of a final hearing on the Motion.

The initial hearing on the Motion having been held by this Court on July 26, 2011 (the *"Interim Hearing"*).

The Interim the hearing was held pursuant to the authorization of Rule 4001(c)(2) and notice (the *"Notice"*) having been served by the Debtor on (i) Collateral Agent, (ii) Imperium, (iii) the United States Trustee for the District of Delaware (the *"U.S. Trustee"*), (iv) the holders of the twenty (20) largest unsecured claims against the Debtor's estates (the *"20 Largest Unsecured Creditors"*), (v); Reed Smith, LLP, counsel for the Debtor, (vi) the Internal Revenue Service, (vii) all appropriate state taxing authorities, (viii) all landlords, owners, and/or operators of premises at which any of the Debtor's inventory and/or equipment is located, and (ix) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets (collectively, the *"Noticed Parties"*).

Upon the record made by the Debtor at the Interim Hearing, including the Motion, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     Petition.  On July 25, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its businesses and manage its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.     Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Notice.  Under the circumstances, the Notice given by the Debtor of the Motion, the Interim Hearing and the relief granted under this Order was reasonable.

D.     Debtor's Acknowledgments and Agreements.  Subject to Section  4.1 below, the Debtor admits, stipulates, acknowledges and agrees that:

(i)     *Existing Promissory Notes.*  Prior to the commencement of the Case, Imperium made loans to Debtor pursuant to the terms and conditions set forth in (1) Senior Term Note, dated April 15, 2010, by Debtor in favor of Imperium in the original principal amount of $6,000,000, (2) Supplemental Term Note, dated June 2, 2011, by Debtor in favor of Imperium in the original principal amount of $500,000, (3) Second Supplemental Term Note, dated June 24, 2011, by Debtor in favor of Imperium in the original principal amount of $850,000 and (4) Secured Term Promissory Note, dated July 22, 2011, by Debtor in favor of Imperium in the original principal amount of $300,000 (collectively, as the same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "**Existing Promissory Notes**," copies of which are included with the Exhibit Supplement defined below) and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Collateral Agent or Imperium, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the

Existing Promissory Notes, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "***Existing Financing Agreements***"). Copies of the operative Existing Financing Agreements are contained in the Exhibit Supplement to the Motion (the "***Exhibit Supplement***").

(ii)     *Pre-Petition Obligations Amount.*  As of the Petition Date, the aggregate outstanding amount of all obligations, liabilities and other indebtedness owing by Debtor to Imperium and Collateral Agent under and in connection with the Existing Financing Agreements was not less than $8,442,000, inclusive of interest accrued through July 22, 2011, plus interest accruing thereafter and all costs, fees, expenses (including reasonable attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is more fully defined in the Ratification Agreement, the "***Pre-Petition Obligations***"). The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations.

(iii)     *Pre-Petition Collateral.*  As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Existing Financing Agreements by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by Debtor to Collateral Agent, for the benefit of itself and Imperium, upon all of the Pre-Petition Collateral (as defined in the Ratification Agreement). The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect the validity, enforceability and non-avoidability of any of Collateral Agent's and Imperium's liens, claims or security interests in the Pre-Petition Collateral.

(iv)     *Proof of Claim.*  The acknowledgment by Debtor of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of

Collateral Agent and Imperium as set forth herein and in the Existing Financing Agreements shall be deemed a timely filed proof of claim on behalf of Collateral Agent and Imperium in this Case.

  E. <u>Findings Regarding the Postpetition Financing.</u>

   (i) *Postpetition Financing.* The Debtor has requested from Imperium, and Imperium is willing to extend, the Third Supplemental Term Loan on the terms and conditions set forth in this Order and the Financing Agreements (as defined below).

   (ii) *Need for Post-Petition Financing.* The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its business in the ordinary course without the financing requested under the Motion. The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund their operations is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of the Estate (as defined below) for the benefit of its creditor constituents. The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with Collateral Agent and Imperium as set forth in this Order and the Financing Agreements is vital to the preservation and maintenance of the going concern values of the Debtor. Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "***Estate***") in order to maximize the recovery for creditors of the Estate.

   (iii) *No Credit Available on More Favorable Terms.* The Debtor is unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on assets. The Debtor has

been unable to procure the necessary financing on terms more favorable than the financing offered by Collateral Agent and Imperium pursuant to the Financing Agreements.

        (iv)    *Budget*. The Debtor has prepared and delivered to Imperium an initial Budget (as defined in the Ratification Agreement). Such Budget has been reviewed by the Debtor and its management and sets forth, among other things, projected weekly cash disbursements of Debtor for the periods covered thereby. The Debtor believes that the Budget is achievable in accordance with the terms of the Financing Agreements and this Order and will allow the Debtor to operate at all times during this Case without the accrual of unpaid administrative expenses. Collateral Agent and Imperium are relying upon the Debtor's compliance with the Budget in accordance with the Ratification Agreement, the other Financing Agreements and this Order in determining to enter into the post-petition financing arrangements provided for herein.

        (v)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The Debtor's entry into the Financing Agreements and this Order reflects the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration. The terms and conditions of the Financing Agreements and this Order have been negotiated in good faith and at arms' length by and among the Debtor, on one hand, and Collateral Agent and Imperium, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by Collateral Agent and Imperium as that term is used in Section 364(e) of the Bankruptcy Code.

        (vi)    *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as the implementation of such relief, among other things, will provide the Debtor with the necessary liquidity to (a) minimize disruption to the Debtor's businesses and on-going operations, (b) preserve and maximize the value of the Debtor's Estate for the benefit of the

Debtor's creditors, and (c) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

(vii)  *Immediate Entry*.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Case has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been resolved or withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "*Interim Order*."

1.2    Authorization to Borrow and Use Loan Proceeds.  Debtor is hereby authorized and empowered to immediately borrow and obtain the Third Supplemental Term Loan, and to incur indebtedness and obligations owing to Collateral Agent and Imperium, pursuant to the terms and conditions of this Interim Order, the Ratification Agreement and the Financing Agreements (as defined in the Ratification Agreement) during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "*Interim Financing Period*"), in such amounts as may be made available to Debtor by Imperium in accordance with the Budget and the terms and conditions set forth in the this Interim Order, the Ratification Agreement and the other Financing Agreements.  Subject to the terms and conditions contained in this Interim Order and the Financing Agreements, Debtor shall use the proceeds of the Third Supplemental Term Loan, and any other credit accommodations provided to Debtor pursuant to this Interim Order or the other Financing Agreements, for, inter alia, the payment of employee salaries, payroll, taxes, and all

other expenses specified in the Budget for other operating and working capital purposes in the ordinary course of Debtor's business in accordance with the Financing Agreements, the U.S. Trustee's fees under 28 U.S.C. § 1930(a)(6), and, subject to Section 2.3 of this Interim Order, Allowed Professional Fees (as defined below).

      1.3    <u>Financing Agreements</u>

      1.3.1    <u>Authorization</u>. The Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Ratification Agreement, the other Financing Agreements and all other agreements, documents and instruments executed or delivered in connection therewith or related thereto.

      1.3.2    <u>Approval</u>. The Financing Agreements (including, without limitation, the Ratification Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among Debtor, Collateral Agent and Imperium, and of Debtor's agreement to all of the terms, conditions, and covenants of the Financing Agreements for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, and other fees and expenses, including, without limitation, all of Collateral Agent's and Imperium's attorney fees and legal expenses, as more fully set forth in the Financing Agreements; <u>provided, that</u>, the Office of the United States Trustee, counsel for the Debtors, and counsel for the Committee (as defined below) shall be entitled to receive and shall have fifteen (15) days from receipt to review for reasonableness the attorneys' fees and legal expenses of Collateral Agent and Imperium. In the absence of any such party's timely filing and service (upon Imperium, Collateral agent and the Debtor) of an objection to such attorneys' fees and legal expenses, the Debtors shall be authorized to pay (or Imperium shall be authorized to pay and include in the Obligations) such fees and expenses; <u>provided, that</u> any payment of legal fees and expenses of Imperium and Collateral Agent in excess of amounts set forth in the Budget for such legal fees and expenses shall not reduce the amounts otherwise available to Debtor

under the Budget and shall not be included in the expenses for purposes of testing compliance with the Budget in accordance with the Ratification Agreement. In the event of any objection, and subject to the foregoing sentence, the Debtor shall pay (or Imperium shall be authorized to pay and include in the Obligations) such attorneys' fees and legal expenses upon the withdrawal of such objection or as determined by an Order of the Court or agreement between Imperium and the party filing such objection.

1.4 <u>Payment of Prepetition Debt</u>. The Debtor is authorized to pay Collateral Agent and Imperium in respect of all Pre-Petition Obligations in accordance with the Financing Agreements and Sections 1.5 and 1.6 of this Interim Order.

1.5 <u>Payments and Application of Payments</u>. The Debtor is authorized and directed to make all payments and transfers of Estate property to Collateral Agent and Imperium as provided, permitted and/or required under the Financing Agreements, which payments and transfers, subject to Section 4.1 herein, shall not be avoidable or recoverable from Collateral Agent or Imperium under Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds of the Collateral received by Collateral Agent or Imperium, and any other amounts or payments received by Collateral Agent or Imperium in respect of the Obligations, shall be deemed to be applied by Collateral Agent and Imperium in accordance with the Financing Agreements and this Interim Order first to the Pre-Petition Obligations, until such Pre-Petition Obligations are indefeasibly paid in full and completely satisfied, and then to the Post-Petition Obligations. Without limiting the generality of the foregoing, the Debtor is authorized and directed, subject to the terms and conditions of this Interim Order and without further order of this Court, to pay or reimburse Collateral Agent and Imperium for all post-petition costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by Collateral Agent and Imperium in connection with the financing transactions as provided in this Interim Order and the

Financing Agreements, all of which shall be and are included as part of the principal amount of the Obligations and secured by the Collateral.

      1.6    <u>Continuation of Prepetition Procedures</u>. All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to Collateral Agent and Imperium and the funding pursuant to the Financing Agreements, including any lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Case.

Section 2.    <u>Postpetition Lien; Superpriority Administrative Claim Status.</u>

      2.1    <u>Post-Petition Lien</u>.

      2.1.1    <u>Post-Petition Lien Granting</u>. To secure the prompt payment and performance of any and all Post-Petition Obligations of Debtor to Collateral Agent and Imperium of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Collateral Agent, for the benefit of itself and the other Imperium, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to certain claims entitled to priority, including the Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Section 2.1.2 below), in and upon all of the Pre-Petition Collateral and the Post-Petition Collateral (as defined in the Ratification Agreement). The Pre-Petition Collateral and the Post-Petition Collateral are collectively referred to herein as the "***Collateral***." Notwithstanding anything to the contrary contained in this Interim Order or the Financing Agreements, the Collateral shall not include avoidance actions under Chapter 5 of the Bankruptcy Code. In accordance with Section 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of Obligations secured by such Collateral after satisfaction of the Post-Petition Obligations of Debtor to Collateral Agent and Imperium, subject to Section 4.1 below, shall constitute additional security for the repayment of the Pre-Petition Obligations and

adequate protection for the use by Debtor, and the diminution in the value, of the Pre-Petition Collateral.

2.1.2 <u>Lien Priority</u>. The pre-petition and post-petition liens and security interests of Collateral Agent and Imperium granted under the Financing Agreements and this Interim Order in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that Collateral Agent's and Imperium's liens on and security interests in the Collateral shall be subject only to (a) liens or security interests in the Collateral that are permitted under the Security Agreement or other Financing Agreements and that are perfected, valid, enforceable, and unavoidable as of the Petition Date; (b) the Carve Out Expenses solely to the extent provided for in Sections 2.3, 2.4 and 2.5 of this Interim Order; and (c) with respect to the unearned retainer held by counsel to the Debtor as of the filing of the Petition, the Debtor's counsel's right to be paid its allowed professional fees from such retainer, plus an additional $21,000 to be paid to Debtor's counsel for fees incurred as set forth in the Budget (together, the "***Permitted Liens and Claims***").

2.1.3 <u>Post-Petition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding a depository account consisting of Collateral (a "***Perfection Act***"). Notwithstanding the foregoing, if Collateral Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Collateral Agent is authorized to perform such act, and the Debtor is authorized and directed (at Debtor's expense but without

reducing the amounts otherwise available to Debtor under the Budget and excluding any such expense for purposes of testing compliance with the Budget in accordance with the Ratification Agreement) to perform such act to the extent necessary or required by Collateral Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Collateral Agent and Imperium may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should Collateral Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

2.2 <u>Superpriority Administrative Expense</u>. For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Financing Agreements or otherwise, Imperium is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "*Superpriority Claim*"), provided, however, the Superpriority Claim shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Order.

2.3 <u>Carve Out Expenses</u>.

2.3.1 <u>Carve Out Expenses</u>. Upon the declaration by Imperium or Collateral Agent of the occurrence of an Event of Default, Collateral Agent's and Imperium's

liens, claims and security interests in the Collateral and the Superpriority Claim shall be subject only to the right of payment of the following expenses (the "*Carve Out Expenses*"):

a. statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

b. fees payable to the Clerk of this Court; and

c. subject to the terms and conditions of this Interim Order, the unpaid and outstanding reasonable fees and expenses actually incurred on or after the Petition Date, and approved by a final order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "*Allowed Professional Fees*"), by attorneys, accountants and other professionals retained by the Debtor and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "*Professionals*"), less the amount of any retainers, if any, then held by such Professionals, in a cumulative, aggregate sum not to exceed $25,000 (the "*Professional Fee Carve Out*").

2.3.2 <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve Out nor the proceeds of the Third Supplemental Term Loan or Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following (but in each instance excluding any motion, objection or other challenge to the declaration by Imperium or Collateral Agent of an Event of Default): (a) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Collateral Agent's and Imperium's liens on and security interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or Collateral Agent's and Imperium's liens on and security interests in the Collateral, or (iii) preventing, hindering or delaying Collateral Agent's or Imperium's assertion

or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Interim Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Imperium and Collateral Agent in accordance with the terms and conditions of this Interim Order, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Imperium, without the prior written consent of Imperium, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Collateral Agent, Imperium or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Collateral Agent or Imperium under Chapter 5 of the Bankruptcy Code, or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Collateral Agent or Imperium, or which is contrary, in a manner that is material and adverse to Collateral Agent or Imperium, to any term or condition set forth in or acknowledged by the Financing Agreements or this Interim Order and which results in the occurrence of an Event of Default under the Financing Agreements or this Interim Order.

       2.4    <u>Carve Out Reserve</u>. At Imperium's sole discretion, Imperium may, at any time, establish a reserve against the amount of Third Supplemental Term Loan that would otherwise be made available to Debtor pursuant to the Financing Agreements in respect of the Professional Fee Carve Out and the other Carve Out Expenses.

       2.5    <u>Payment of Carve Out Expenses</u>.

       2.5.1    Prior to the receipt by Debtor's counsel of written notice of an Event of Default or the Termination Date, Debtor shall be permitted to pay Allowed Professional Fees of the Professionals in accordance with the Budget and any such amounts paid prior to the occurrence of an Event of Default shall not reduce the Professional Fee Carve-Out; <u>provided</u>,

that, any such allowed Professional Fees shall be paid first from the amount of any retainers held by such Professionals.

2.5.2   Any payment or reimbursement made either directly by Collateral Agent or Imperium at any time, or by or on behalf of the Debtor on or after the occurrence of an Event of Default, in respect of any Allowed Professional Fees or any other Carve Out Expenses (exclusive of the application of any retainers by any of the Professionals) shall, in either case, permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis.  Collateral Agent's and Imperium's obligation to fund or otherwise pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made a part of the Obligations, secured by the Collateral, and entitle Collateral Agent and Imperium to all of the rights, claims, liens, priorities and protections under this Interim Order, the Financing Agreements, the Bankruptcy Code or applicable law.  Payment of any Carve Out Expenses, whether by or on behalf of Collateral Agent or Imperium, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of Collateral Agent's and Imperium's liens and security interests in the Collateral or the Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Except as otherwise provided herein with respect to the Professional Fee Carve and the other Carve Out Expenses, Collateral Agent and Imperium shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4 or 2.5 of this Interim Order shall be construed to obligate Collateral Agent or Imperium in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

2.6   <u>Use of Cash Collateral; Adequate Protection.</u>

2.6.1   <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the Financing Agreements, and in accordance with the Budget, Debtor shall be and is hereby authorized to use, until the date on which all Obligations

are due and payable under the Financing Agreements, whether by acceleration or otherwise, the Cash Collateral (as defined in Section 363 of the Bankruptcy Code) subject to the pre-petition liens and security interests granted to the Collateral Agent and Imperium. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the Financing Agreements and in accordance with the Budget.

2.6.2 <u>Replacement Liens</u>. As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtor's use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out-Expenses, the Collateral Agent, for the benefit of itself and Imperium, is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "**Adequate Protection Replacement Lien**"). The Adequate Protection Replacement Lien shall be junior and subordinate only to the Permitted Liens and Claims and the liens and security interests granted to Collateral Agent and Imperium in the Collateral securing the Post-Petition Obligations and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

2.6.3 <u>Section 507(b) Priority Claim</u>. As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtor's use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out-Expenses, Imperium is hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Case and any Successor Case (the "**Adequate Protection Superpriority Claim**"). The Adequate Protection Superpriority Claim shall be junior only to the Permitted Liens and Claims and shall otherwise have priority over all

administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

> 2.6.4    Other Adequate Protection.  As further adequate protection, Debtor is hereby authorized to provide adequate protection to Collateral Agent and Imperium in the form of: (a) payment of interest, fees and other amounts due under the Existing Financing Agreements, at the times specified therein and in a Budget, to Collateral Agent and Imperium, and (b) ongoing payment of the fees, costs and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses, of the Collateral Agent and Imperium as required under the Existing Financing Agreements.

Section 3.    Default; Rights and Remedies; Relief from Stay.

> 3.1    Events of Default.  The occurrence of any of the following events shall constitute an "*Event of Default*" under this Interim Order:

> > a.    Debtor's failure to perform, in any material respect, any of the terms, conditions or covenants or their obligations under this Interim Order; or

> > b.    An "Event of Default" under the Ratification Agreement.

> 3.2    Rights and Remedies Upon Event of Default.  Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the Financing Agreements, and (ii) Imperium and Collateral Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Financing Agreement, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend credit to Debtor, setting off any Obligations with Collateral or proceeds in Imperium's or Collateral Agent's possession, and enforcing any and all rights with respect to the Collateral.  Other than with respect to the Carve Out Expenses, Collateral Agent and Imperium shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence

of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

      3.3    <u>Expiration of Commitment</u>.  Upon the expiration of Debtor's authority to borrow and obtain other credit accommodations from Collateral Agent and Imperium pursuant to the terms of this Interim Order and the Financing Agreements (except if such authority shall be extended with the prior written consent of Imperium, which consent shall not be implied or construed from any action, inaction or acquiescence by Collateral Agent or Imperium), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the Obligations shall immediately become due and payable and Collateral Agent and Imperium shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Collateral Agent and Imperium pursuant to the terms and conditions of the Financing Agreements or this Interim Order, and Collateral Agent, acting on behalf of itself and Imperium, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the Financing Agreements or applicable law which Collateral Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtor's Estate.

      3.4    <u>Relief from Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Collateral Agent and Imperium to perform any act authorized or permitted under or by virtue of this Interim Order or the Financing Agreements, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Financing Agreements, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the

Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Financing Agreements, and apply such payments to the Obligations pursuant to the Financing Agreements and this Interim Order. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "*Enforcement Notice*") to counsel for the Debtor, counsel to any statutory committee appointed in the Case under Section 1102 of the Bankruptcy Code (the "*Committee*"), and the U.S. Trustee, Collateral Agent and Imperium shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Financing Agreements or applicable law as they may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which Collateral Agent, for the benefit of itself and the Imperium, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations.

Section 4.    <u>Representations; Covenants; and Waivers.</u>

4.1    <u>Objections to Pre-Petition Obligations.</u>    Any action, claim or defense (hereinafter, an "*Objection*") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Obligations, (b) the extent, legality, validity, perfection or enforceability of Collateral Agent's and Imperium's pre-petition liens and security interests in the Pre-Petition Collateral, or (c) Collateral Agent's and Imperium's right to apply proceeds of Post-Petition Collateral against Pre-Petition Obligations in satisfaction of Collateral Agent's and Imperium's pre-petition liens as provided for in this Interim Order, shall be filed with the Court by any Committee or, if no Committee is appointed, by any other party in interest (other than the Debtor) within the earlier of sixty (60) calendar days from the entry of this Interim Order or the deadline to objection to the Sale Motion (as defined in the Ratification Agreement). To the extent any such Objection is timely filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations or Collateral Agent's and Imperium's liens on the Pre-Petition

Collateral. If no Objection is timely filed, or to the extent a timely filed Objection is denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Collateral Agent's and Imperium's pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims, and (b) Collateral Agent, Imperium and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Existing Financing Agreements and the Pre-Petition Obligations shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Collateral Agent and Imperium in connection with all post-petition loans and other financial and credit accommodations provided by Collateral Agent and Imperium to Debtor in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Financing Agreements.

4.2    Debtor's Waivers.  At all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek authority (i) to use Cash Collateral of Collateral Agent and Imperium under Section 363 of the Bankruptcy Code, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from Collateral Agent and Imperium or as may be otherwise expressly permitted pursuant to the Financing Agreements, (iii) to challenge the application of any payments authorized by this Interim Order as pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of

all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Ratification Agreement, or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Collateral Agent and Imperium as provided in this Interim Order and the Financing Agreements or Collateral Agent's and Imperium's exercise of such rights or remedies; provided, however, that Collateral Agent and Imperium may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Collateral Agent or Imperium.

4.3     Section 506(c) Claims.  Subject to and effective only upon the entry of a Final Order, no costs or expenses of administration which have or may be incurred in the Case (other than the Carve Out Expenses) shall be charged against Collateral Agent or Imperium, their respective claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Collateral Agent and Imperium, and no such consent shall be implied from any other action, inaction or acquiescence by Collateral Agent or Imperium.

4.4     Collateral Rights.  Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

4.4.1     upon and after the occurrence of an Event of Default, and subject to Imperium and Collateral Agent obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Collateral Agent and Imperium (or any of their employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor (to the extent the foregoing is permitted by applicable law) and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its businesses.  Collateral Agent and Imperium will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such

property for the period of time that Collateral Agent and Imperium actually use the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Collateral Agent and Imperium actually occupy or uses such assets or properties).

    4.5   <u>Release</u>.  Upon the earlier of (a) the Final Order or (b) the entry of an Order extending the Interim Financing Period beyond thirty (30) calendar days after the date of this Interim Order, and in each instance, subject to Section 4.1 above, in consideration of Collateral Agent and Imperium making post-petition loans, advances and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Financing Agreements and this Interim Order, the Debtor, on behalf of itself and its successors and assigns, (collectively, the "***Releasors***"), shall, forever release, discharge and acquit Collateral Agent, Imperium and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (collectively, the "***Releasees***") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Pre-Petition Obligations, the Financing Agreements and any loans or other financial accommodations made by Collateral Agent and Imperium to the Debtor pursuant to the Financing Agreements. In addition, upon the repayment of all Obligations owed to Collateral Agent and Imperium by Debtor and termination of the rights and obligations arising under the Financing Agreements and either a Final Order or extended Interim Order, as the case may be (which payment and termination shall be on terms and conditions acceptable to Collateral Agent and Imperium), Collateral Agent and Imperium shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Financing Order (as defined in the Ratification Agreement) and the

Financing Agreements (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses), on terms and conditions acceptable to Collateral Agent and Imperium; provided, however, in the event all Obligations are satisfied in full, nothing herein shall release any Releasee from any obligations under this Order or the Financing Agreements to pay expenses set forth in the Budget which accrued on or before such date of satisfaction of the Obligations, even if such expenses fall due after satisfaction of the Obligations (so that the Estate is not administratively insolvent).

Section 5.    Other Rights and Obligations.

    5.1    No Modification or Stay of This Interim Order.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Financing Agreements or any term hereunder or thereunder, (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of the Case (each, a "**_Subject Event_**"), (x) the acts taken by Collateral Agent and Imperium in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Collateral Agent's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Collateral Agent and Imperium in accordance with this Interim Order, and the liens granted to Collateral Agent and Imperium in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Collateral Agent and Imperium pursuant to this Interim Order and the Financing Agreements shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

    5.2    Power to Waive Rights; Duties to Third Parties.  Collateral Agent and Imperium shall have the right to waive any of the terms, rights and remedies provided or

acknowledged in this Interim Order in respect of Collateral Agent and Imperium (the "***Imperium Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, Imperium Right(s). Any waiver by Collateral Agent or Imperium of Imperium Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce Imperium Right shall neither constitute a waiver of such Imperium Right, subject Collateral Agent or Imperium to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Collateral Agent or Imperium.

        5.3   <u>Disposition of Collateral</u>. Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, outside of the ordinary course of business, without the prior written consent of Collateral Agent and Imperium (and no such consent shall be implied, from any other action, inaction or acquiescence by Collateral Agent or Imperium) and an order of this Court. Debtor shall remit to Collateral Agent, or cause to be remitted to Collateral Agent, all proceeds of the Collateral for application by Collateral Agent to the Obligations in accordance with the terms of this Interim Order.

        5.4   <u>Intentionally omitted</u>.

        5.5   <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Collateral Agent and Imperium to pursue any and all rights and remedies under the Bankruptcy Code, the Financing Agreements or any other applicable agreement or law, including, without limitation, rights to seek additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

        5.6   <u>Binding Effect</u>.

5.6.1   The provisions of this Interim Order and the Financing Agreements, the Post-Petition Obligations, Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Collateral Agent and Imperium provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case.

5.6.2   Any order dismissing the Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Professional Fee Carve Out, the Superpriority Claim and Collateral Agent's and Imperium's liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Collateral.

5.6.3   In the event this Court modifies any of the provisions of this Interim Order or the Financing Agreements following a Final Hearing, (a) such modifications shall not affect the Professional Fee Carve Out or the rights or priorities of Collateral Agent and Imperium pursuant to this Interim Order with respect to the Collateral or any portion of the Obligations that arises or is incurred or advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.6.4   This Interim Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed or elected in the Case or any subsequently converted bankruptcy case(s) of any Debtor.  This Interim Order shall also inure to the benefit of Collateral Agent, Imperium, Debtor and their respective successors and assigns.

5.7 <u>Plan Treatment</u>. All post-petition advances and other financial accommodations under the Financing Agreements are made in reliance on this Interim Order. The security interests and liens granted to or for the benefit of Collateral Agent and Imperium hereunder and the rights of Collateral Agent and Imperium pursuant to this Interim Order and the Financing Agreements with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor and, if Collateral Agent shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

5.8 <u>Term; Termination</u>. Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtor, Collateral Agent and Imperium authorized by this Interim Order may be terminated pursuant to the terms of the Ratification Agreement.

5.9 <u>Limited Effect</u>. Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Financing Agreements and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the Financing Agreements.

5.10 <u>Objections Overruled</u>. All objections to the entry of this Interim Order are, to the extent not resolved or withdrawn, hereby overruled.

Section 6. <u>Final Hearing and Response Dates.</u> The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for August 10, 2011, at 10:00 a.m. before this Court (the "*Final Hearing*"). The Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to the members or counsel (if any) of any statutory committee. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtor, Reed Smith, LLP Attn: Kurt F. Gwynne (kgwynne@reedsmith.com) and Richard A. Robinson (rrobinson@reedsmith.com), Fax: (302)

778-7575; (b) counsel for the Collateral Agent, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Jonathan N. Helfat (jhelfat@oshr.com) and James M. Cretella (jcretella@oshr.com), Fax: (212) 682-6104; (c) counsel to any statutory committee; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than 12:00 (noon) (Eastern) on August 8, 2011.

Dated: July 27, 2011
Wilmington, Delaware

_____
PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE